ERIK A. CHRISTIANSEN (7372)
KATHERINE VENTI (9318)
PARSONS BEHLE & LATIMER
Attorneys for MAX International, LLC
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

## IN THE THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>RICK and NATALIE FOELLER,<br><br>    Defendants. | **NON-PARTY MAX INTERNATIONAL, LLC'S OPPOSITION TO MELALEUCA, INC.'S MOTION TO COMPEL**<br><br>Idaho Case No.: CV-09-2616<br><br>Utah Case No. 090914033<br><br>Hon. Judge Denise Lindberg |

Non-party MAX International, Inc. ("MAX") hereby opposes the Motion to Compel filed by Melaleuca, Inc. ("Melaleuca") as follows:

## I.    INTRODUCTION

Melaleuca has filed three separate lawsuits in the Idaho State Court against former Melaleuca marketing executives—Rick and Natalie Foeller, Laraine and Raymond Agren, and Gwendolyn an Lydell Miles—for alleged breach of respective Independent Marketing Executive Agreements ("IMEA"), which allegedly prohibited such former marketing executives from

recruiting or soliciting Melaleuca customers and marketing executives for another business venture for twelve months after termination of their IMEAs.[1]  Apparently, the Foellers, Agrens and Miles were not employees of Melaleuca, but rather were independent contractors of Melaleuca.

MAX is a competitor of Melaleuca's based in Utah in the multi-level marketing industry. MAX has about 60,000 current independent contractor distributors, who are the independent sales force for MAX's products.  MAX is not a party to the Idaho actions, and is not aware of the number of independent distributors with relationships with Melaleuca.

Since the filing of the Motion to Compel, the Agrens and Miles did not oppose the motions for preliminary injunctions that Melaleuca filed against them in Idaho. Melaleuca thus already has obtained preliminary injunctions against the Agrens and the Miles in Idaho.  There is thus no longer any need for the information and documents sought by Melaleuca from MAX in those two cases, given that the Agrens and Miles have defaulted in the Idaho actions.

With respect to the Foellers, Melaleuca to date has not filed any motion for a preliminary injunction or other injunctive relief against the Foellers.  There are thus no exigent circumstances that require any emergency disposition by this Court.  Indeed, discovery does not close in the Foeller case until late 2010.

In pursuit of its  claims against the Foellers in Idaho, Melaleuca has filed this  action in Utah and  served MAX -- a non-party to the Idaho actions -- with overly broad, burdensome, and oppressive subpoenas,  which seek highly proprietary and competitive information  from MAX,

---

[1] A copy of the Idaho complaint in the Foeller case is attached hereto as Ex. 1.

which is not reasonably calculated to lead to the discovery of admissible evidence. In , given the substantial production by MAX already made in this case, which is described below, Melaleuca's requests are no more than a fishing expedition and poorly disguised attempt to obtain MAX's list of 60,000 independent distributors.

As such, MAX has objected to the requests. Specifically, MAX has objected to releasing its "upline" and "downline" information for any of the defendants, including the Foellers. In a multi-level marketing company, an "upline" are the individuals who sit above a particular associate in the company's compensation tree or system. In a multi-level marketing company, a "downline" are the individuals who sit below a particular associate in the company's compensation tree or system. MAX's "upline" and "downline" information and the identities of who is in its "upline" and "downline": (1) are irrelevant to Melaleuca's claims that its former marketing executives allegedly violated their agreements with Melaleuca; (2) would not provide information that reasonably could lead to the discovery of admissible information in that upline and downline information does not show or evidence recruiting or soliciting information; and (3) would force MAX, a non-party, to provide highly confidential and competitive information belonging to MAX and MAX's independent associates, also not parties to this litigation, for no reason other than to have MAX turn over to a competitor information regarding the identities of the individuals in MAX's own proprietary distributor marketing force. Such information would have tremendous economic value to MAX's competitors like Melaleuca, and is highly protected and safeguarded from competitors by MAX.

MAX also has objected to searching its databases to "search for documents for information related to Melaleuca and its former marketing executives other than those expressly identified by Melaleuca." Melaleuca's Mem. in Support of Mot. to Compel, at iii. MAX has objected to providing information for unnamed individuals because MAX is simply incapable of searching its databases for unnamed, unidentified individuals somehow relating to unnamed former Melaleuca marketing executives, and should not be, as a non-party, subject to attempt so vague and broad a request. Indeed, MAX has more than 60,000 distributors whom are independent contractors and not employees. MAX does not collect or track whether such independent distributors previously may have been, or currently are, distributors for other network marketing companies. The burden of having MAX interview 60,000 independent distributors for the benefit of Melaleuca clearly outweighs any probative information that Melaleuca might potentially discover from such a widespread and wholesale fishing expedition. It would be impossible for MAX to ascertain information that it does not collect or track in its computer system.

To compound matters, Melaleuca has failed to inform the Court of what MAX already actually has agreed to do, and has done, in response to the Subpoenas. In fact, MAX already has agreed to produce (and has produced) the sponsorship, enrollment and earnings information for each of the individuals identified by name by Melaleuca in the subpoenas. MAX also has voluntarily searched an additional *one hundred thirty-five (135)* names, emails, and addresses of purported former Melaleuca marketing executives provided to MAX by Melaleuca on Melaleuca's blind *hunch* that those 135 individuals *may have* cancelled their subscriptions with

Melaleuca to work for MAX. Tellingly, of those 135 names provided by Melaleuca, only *nine (9)* additional individuals were discovered to be MAX associates. In other words, Melaleuca provided MAX with its cancelation list, and MAX searched its database, and found that only 9 of the 135 former Melaleuca associates turned out to be MAX associates. A better example of a fishing expedition would be hard to find when less than 10% of the names provided by Melaleuca actually turned up to have anything to do with MAX.

Prior to the filing of the Motion to Compel, MAX had made it clear to Melaleuca that it was ready and willing to produce all this information. However, at the time of the filing of the Motion to Compel, Melaleuca had not yet filed the agreed-upon stipulated protective orders in all three of the Idaho cases so that MAX could actually produce the requested information. Nor had Melaleuca provided MAX with fully executed and date stamped copies of the stipulated protective order to verify that the stipulated protective orders have been filed in all three Utah cases. Until such time as MAX had received such verification, MAX could not produce such documents. In short, Melaleuca filed a Motion to Compel even before it was capable of receiving the documents sought because no stipulated protective order had been filed.

Indeed, it was not until September 29, 2009, that Melaleuca produced verification that the Foeller stipulated protective order had been filed in the Utah case, and Melaleuca still has not finalized the other stipulated protective orders for either the Utah actions or the Idaho actions. Accordingly, on September 30, 2009, MAX produced the sponsorship, enrollment and earnings information for the Foeller matter only, pursuant to the protective order entered in the Foeller Utah matter. Melaleuca has continued to fail to satisfy its obligations for the other actions.

The information that MAX has obtained and produced in the <u>Foeller</u> matter, subject to the stipulated protective order, contains information which shows that Defendants are, in fact, sponsors of some of the Melaleuca associates identified by Melaleuca. As such, Melaleuca now has sufficient information for their <u>Foeller</u> case pending in Idaho to show sponsorship of MAX associates by the Defendants, without the need to further burden MAX. Any additional documentation would simply be cumulative, and burdensome, and intended simply to attempt to obtain MAX's highly confidential and proprietary distributor lists containing and names with no basis to believe that there are additional names sponsored by Melaleuca. Indeed, because MAX's uplines and downlines do not reflect sponsorship, but instead are the result of a variety of other factors, obtaining upline and downline information for each Melaleuca name in the Subpoena would not provide evidence of any sponsorship or recruiting activity in MAX's tree system.

As such, Melaleuca's arguments in its Motion to Compel are without merit and should be denied.

## II.   <u>MAX'S STATEMENT OF FACTS</u>

1.    Melaleuca is the Plaintiff in at least three separate actions filed in Idaho State Court involving former employees/distributors of Melaleuca who allegedly left Melaleuca to work as independent associates selling MAX products: <u>Melaleuca v. Rick and Natalie Foeller, Seventh Judicial District of Idaho, County of Bonneville, Case No. CV-09-2616</u> ("the Foeller matter"), <u>Melaleuca v. Laraine and Raymond Agren,  Seventh Judicial District of Idaho, County of Bonneville, Case No. CV-09-5070</u> ("the Agren matter"), and <u>Melaleuca v. Gwendolyn and</u>

<u>Lydell Miles, Seventh Judicial District of Idaho, County of Bonneville, Case No. CV-090915353</u>
("the Miles matter").

2.     MAX has its principal place of business in Utah and is not a party to any of
Melaleuca's various Idaho cases underlying this discovery dispute. Affidavit of Katherine Venti
in Support of MAX International, LLC's Opposition to Melaleuca, Inc.'s Motion to Compel
("Venti Aff."), ¶ 3, attached as Ex. 2.

3.     On or about August 25, 2009, Melaleuca served MAX, a non-party, with a Rule
30(b)(6) Deposition Subpoena Duces Tecum to Max International, LLC, through a
miscellaneous action here for  <u>Melaleuca, Inc. v. Rick and Natalie Foeller, Seventh Judicial</u>
<u>District, Idaho, Case No. CV-2009-2616</u>, commanding a deposition of a MAX representative and
production of a massive amount of highly confidential and proprietary documentation allegedly
related to Melaleuca's litigation pending in Idaho.  Venti Aff. ¶ 4.     Despite the voluminous
amount of material and information requested, the subpoena was issued giving short notice to
MAX, demanding compliance on September 9, 2009, a mere two weeks after service. <u>Id.</u>

4.     Although MAX was served with the subpoena on or about August 25, 2009,
during that time, MAX was moving offices *and* planning for and conducting its distributor
associate Annual Convention at the Salt Palace Convention Center, which occurred the week of
September 9, 2009.  As such, MAX's legal affairs department did not receive the subpoena until
September 8, 2009, and was unable to get it to outside counsel for response until that date.
Affidavit of Erin Edmonds, Vice President, Legal Affairs, MAX International, LLC ("Edmonds
Aff."), ¶ 2, attached hereto as Ex. 3.

5.      Accordingly, on September 8, 2009, MAX's outside counsel immediately notified Melaleuca's local counsel via email, explained that he had just been made aware of the subpoena, and notified Melaleuca's counsel that MAX objected to the subpoena on the grounds that deposition and document production does not allow a reasonable time for compliance given the short notice and the nature  of the information requested and on the grounds that the subpoena inappropriately requires disclosure of highly confidential and proprietary information. Outside counsel further explained that there may be additional objections as well.  Venti Aff. ¶ 5.

6.      More formal objections to the <u>Foeller</u> Subpoena were then timely served on September 9, 2008. <u>Id</u>.

7.      The demands contained in the subpoena included many overly-broad and objectionable requests, representative examples, including:

> **REQUEST FOR PRODUCTION 2**: All documents concerning or ***relating in any way to Melaleuca, Inc.***, including but not limited to ***all e-mails, recordings, documents, or memoranda***, including any and ***all drafts*** thereof, which relate to or mention Melaleuca, Inc. or its employees, its Marketing Executive, former Marketing Executives, products, compensation plan, or business. (emphasis added).

> REQUEST FOR PRODUCTION 3: Documents sufficient to identify ***any and all persons or entities in the Max Int'l business organization(s)*** (e.g., "uplines or downlines") of ***any person mentioned*** or described in Deposition Topic 1 (referring to ***any and all agreements*** of whatsoever kind or nature between Max and a list describing 9 complex branches of possible relationships) (emphasis added).

See Ex. A to Melaleuca's Memorandum in Support of its Motion to Compel.

8.      In response, on September 9, 2009, pursuant to Rule 45 of the Utah Rules of Civil Procedure, non-party MAX, served its Objection of Max International, LLC to Rule 30(b)(6) Deposition Subpoena Duces Tecum in the Foeller matter.  Venti Aff., ¶ 8.  MAX objected primarily on the grounds that the request was unduly burdensome considering MAX was not a party to the lawsuit pending in Idaho and the information sought was highly confidential and proprietary operational information and not calculated to obtain information related to Melaleuca's underlying case.  Id.  In this regard, the Subpoena is seeking, among other things, MAX's multi-level marketing upline and downline information, which information is irrelevant to Melaleuca's Idaho claims and, more importantly, is highly confidential and proprietary information, and which, if disclosed, would provide Melaleuca, a competing multi-level marketing company, with the names and contact information of virtually all of MAX's approximately 60,000 independent distributors, which MAX has spent tremendous time and resources to acquire, and which MAX vigorously protects as a trade secret.  Id.  Indeed, by their subpoenas, Melaleuca is seeking the names and contact information of MAX's entire independent associate sales force, constituting tens of thousands of individuals. Such a request is not only overbroad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, but is Melaleuca's back-door attempt to acquire MAX's trade secrets, which it has spent considerable sums to assemble. Id.

9.      Moreover, on September 8, 2009, counsel for MAX and counsel for Melaleuca conferred regarding the subpoena and MAX's objections; and, contrary to Melaleuca's counsel's

representations to MAX's counsel on September 8, 2009, that there was a pending preliminary injunction hearing in the Foeller matter, MAX determined that there was, in fact, no such pending hearing after speaking with defense counsel, Rick Armstrong, Esq. and checking with the Idaho Court. Venti Aff., ¶ 6.

10.     However, in a good faith effort to avoid unnecessary motion practice, MAX's counsel sought to comply with Melaleuca's discovery requests by clarifying and limiting the scope of Melaleuca's discovery requests, establishing mutually convenient deposition dates for all involved, and properly protecting any highly confidential or proprietary trade secret information in excess of Melaleuca's discovery needs. Venti Aff., ¶ 7. Accordingly, in addition to its formal Objections, on September 9, 2009, MAX's counsel also issued a meet and confer letter setting forth its concerns and objections to Melaleuca's Rule 30(b)(6) Deposition Subpoena Duces Tecum to MAX in the Foeller matter and, seeking to reach an agreement on the scope of the subpoena, a stipulated protective order in the Foeller matter, and deposition times for that subpoena. Venti Aff., ¶ 9.

11.     Also, in the September 9, 2009 meet and confer letter, MAX made Melaleuca's counsel aware that MAX had moved offices and conducted its distributor associate convention at the Salt Palace Convention Center during the week of September 9, 2009; and that these events caused MAX to experience exemplary circumstances which rendered the Melaleuca's limited time for production demand even more difficult to comply with. Venti Aff., ¶ 9.

12.     MAX subsequently drafted a Stipulated Protective Order.  Venti Aff., ¶ 10. Although MAX's counsel and counsel for Defendants Rick and Natalie Foeller signed the

4825-7576-0388.1

10

Stipulated Protective Order and provided it to Melaleuca's counsel,  Melaleuca's counsel did not provide evidence that Melaleuca had properly filed it with this Court in Utah until September 29, 2009, and has failed to provide evidence that it has been filed with the Idaho Court by producing to MAX a date stamp copy of the filed Stipulated Protective Order. Id.

13.   On September 15, 2009, counsel for Melaleuca and counsel for MAX had a telephone conference to clarify and properly limit the scope of the discovery demands in the Foeller matter.  Venti Aff., ¶ 11.   During that telephone conference, Melaleuca's counsel informed MAX's counsel that it would be issuing subpoenas in other matters.  MAX's counsel informed Melaleuca's counsel that it would object to multiple depositions on the same issues and documents and would likely have the same issues in other matters as in the Foeller matter.   Id.

14.   On September 8, 2009, in the Miles matter, the Idaho Court apparently entered a temporary restraining order prohibiting Gwendolyn and Lydell Miles from using or disclosing Melaleuca's proprietary and confidential information.  Venti Aff., ¶ 12.   A hearing regarding that order and the entry of a preliminary injunction, which appears to have been extended at least once, was scheduled for Monday, September 28, 2009, in Idaho State Court wherein, as  MAX understands, Melaleuca obtained preliminary injunctions against the Agrens and the Miles. Id.

15.   Late in the afternoon on September 16, 2009, just prior to a second scheduled telephone conference in the Foeller matter where the attorneys were to discuss discovery dispute and service issues, Melaleuca sent counsel for MAX a courtesy copy of a subpoena seeking information from MAX, a non-party to Melaleuca's Idaho litigation, regarding Melaleuca's claims against Gwendolyn and Lydell Miles, who are defendants in another Melaleuca Idaho

cases. Venti Aff., ¶ 13. As counsel did not yet have permission to accept service, which was going to be discussed in the phone conference, it could not accept such service and the Subpoena was formally served on MAX on September 18, 2009. Id.

16.     On September 2, 2009, in the <u>Melaleuca, Inc. v. Laraine and Raymond Agren</u> matter, the Idaho Court apparently entered a temporary restraining order prohibiting Laraine and Raymond Agren from using or disclosing Melaleuca's proprietary and confidential information. Venti Aff., ¶ 14. MAX is not a party to this litigation.

17.     Also on September 16, 2009, Melaleuca served a courtesy copy of a subpoena seeking information from MAX, a non-party to Melaleuca's Idaho litigation, regarding Melaleuca's claims against Laraine and Raymond Agren, who are defendants in another of Melaleuca's underlying Idaho cases. Venti Aff., ¶ 15. As counsel did not yet have permission to accept service, which was going to be discussed in the phone conference, it could not accept such service and the Subpoena was formally served on MAX on September 18, 2009. Id.

18.     Also, on September 16, 2009, again just prior to a scheduled telephone conference between Melaleuca's counsel and MAX's counsel, filed an Ex Parte Motion to Shorten Time to Respond to Subpoena in the <u>Agren</u> and <u>Miles</u> matters, which MAX has opposed. Venti Aff., ¶ 15. No ruling has been made on the Ex Parte Motion to date. The Subpoena thus did not provide sufficient time for MAX to respond pursuant to Rule 45.

19.     MAX objected to the <u>Agren</u> and <u>Miles</u> subpoenas on substantially the same grounds it objected to the <u>Foeller</u> subpoena. Venti Aff. ¶ 8. On September 16, 2009, MAX's counsel sent a letter to Melaleuca's counsel responding to Melaleuca's letter issued on

September 15, 2009, outlining MAX's concerns, agreements, and the scope of search it would undertake in complying with the subpoenas as discussed in the September 15, 2009 telephone conference, including providing to Melaleuca information concerning who sponsored the identified Melaleuca marketing executives in the MAX organization, whom those persons in turn sponsored, and who was personally enrolled by such identified persons. Venti Aff., ¶ 16.  MAX completed its search of that information on September 22, 2009.  Id.

20.     Meanwhile, on September 17, 2009, Melaleuca's counsel forwarded to counsel for MAX a list of 135 names, addresses and email addresses of individuals who purportedly cancelled their subscription to Melaleuca.  Venti Aff., ¶ 17.  These additional 135 names were not previously listed or identified in any of the three prior subpoenas, Melaleuca had no idea whether these 135 individuals were indeed associated with MAX, and were simply fishing for information on cancelled subscriptions.  Id.

21.     Despite the fact that the additional names were not included in any subpoena, MAX, in an effort to cooperate and facilitate discovery in the Idaho cases, voluntarily undertook a search of the names, addresses, and email addresses provided by Melaleuca, the majority of which are *not* associated with MAX.  Indeed, MAX out of the 135 names provided, found only an additional 9 entities that had not been located in prior searches performed with the initial subpoena information.  Id.  MAX completed its search of the sponsorship and enrollment information for the 9 additional associates on September 25, 2009.  Id.

22.     It was the understanding of all the parties that because the information sought by Melaleuca is intended to be used in the Foeller case, the Agren case, *and* the Miles case, none of

the MAX highly confidential and proprietary information regarding its associates can be produced until all protective orders are entered of record in the respective cases. On September 22, 2009, counsel for Melaleuca circulated for signature Stipulated Protective Orders in the Agren and Miles cases, which counsel for MAX signed and returned the same day. However, as of September 24, 2009, the date of filing of Melaleuca's Motion to Compel, Melaleuca notified MAX counsel that it still had not received signed protective orders from other counsel and consequently, has not yet filed the Stipulated Protective Orders. Venti Aff., ¶ 18. Accordingly, MAX could not then produce such information. Melaleuca thus filed this Motion to Compel seeking to compel documents before it is even possible for MAX to produce what it already has assembled for production.

23.     On September 29, 2009, however, Melaleuca finally forwarded verification that the stipulated protective order had been entered of record in the Foeller matter. Melaleuca's counsel further explained: "The defendants in the other actions have not signed the Protective Order prepared in those cases. I understand that Agrens have defaulted and the Miles did not appear for the Preliminary Injunction hearing and the injunction was entered against them." Venti Aff., ¶ 19.

24.     Based on the above representations, on September 30, 2009, MAX produced the sponsorship, enrollment and earnings information in the Foeller case only. Pursuant to the Stipulated Protective Order, these documents shall be used solely for the prosecution or defense of the Foeller matter and cannot be used in any other case. Venti Aff., ¶ 20.

25.     Accordingly, although MAX had been ready and willing to produce and disseminate information regarding its agreed database searches on the individuals named in the original subpoenas and the additional 135 names, it could not produce such information until it had verification that the protective orders have been fully executed and filed.   Without such protective orders, MAX still cannot produce documents for use in the <u>Miles</u> or <u>Agren</u> matters, nor can the information produced in the <u>Foeller</u> matter be used in those cases..   Venti Aff., ¶ 21.

26.     In addition, as the September 29, 2009 communication from Melaleuca's email implies, and as confirmed by the court in Idaho, the preliminary injunction hearings in the <u>Agren</u> and <u>Miles</u> matters have already taken place and Melaleuca has secured their preliminary injunctions against those defendants.  Accordingly, there is no longer any  basis for Melaleuca's timing arguments, and no need for discovery from MAX. Venti Aff., ¶ 22.

27.     As a non-party to Melaleuca's out-of -state litigation, MAX will be subjected to undue burden, excessive cost and hardships if it is forced to comply with Melaleuca's unreasonable and unnecessary requests to produce all upline and downline information. If MAX is forced to disclose the names and contact information for each of its 60,000 associates, it will be unfairly and inappropriately forced to disclose highly confidential and proprietary trade secrets, which are not likely to lead to the discovery of admissible evidence, and which MAX needs to protect from being discovered by a competing network marketing company. Venti Aff., ¶ 23.

28.     Specifically, with regard to Melaleuca's request for upline and downline information related to Melaleuca's former marketing executives who are now enrolled in MAX,

such information is highly confidential and proprietary material for *every* network marketing company, including MAX. Affidavit of Peter Nordberg, CEO of MAX International, LLC, ¶ 2, ("Nordberg Aff."), attached hereto as Ex. 4. Indeed, Melaleuca would not be willing to share the names and addresses of all of its distributors with MAX.

29.     Indeed, the life blood of any network marketing company is its associates in the upline and downline of genealogy compensation tree, and MLNs do not share the information with competitors. Nordberg Aff., ¶ 3. The unique methods and formulas of establishing the undisclosed uplines and downlines are protected as confidential trade secrets and such information is the result of valuable proprietary contributions attributable to the independent efforts of MAX associates. This undisclosed, sensitive information is the property of the MAX. Id.

30.     To disclose upline or downline information to a direct competitor in a network marketing company, or even to such competitor's counsel, would be to reveal trade secrets to competitors. Nordberg Aff., ¶ 4. MAX considers the upline and downline information to be a trade secret, and protects the information as such. Id.

31.     Indeed, in the MAX system, MAX's own associates have no access to their upline information an only limited access to their downline information. Id. Additionally, upline and downline placement in MAX's genealogy tree is not driven by or determined by who sponsored or recruited a particular associate or whom that associate sponsors or recruits. Nordberg Aff., ¶ 5. Instead, placement in the genealogy compensation tree is complex, subject to

certain negotiation, individual relationships, economic factors and other issues and is not indicative of recruiting or solicitation. Id.

32.     In MAX's genealogy compensation tree, there is not necessarily any link to recruitment in 1 level, 5 levels, or even 7 levels, and certainly no link to recruitment as the levels increase. Therefore, providing even limited levels of upline or downline will not provide the information Melaleuca is purportedly seeking, but only puts MAX at risk for revealing highly competitive information . Id.

33.     Contrary to Melaleuca's assertions in its Memorandum in Support of its Motion to Compel, disclosure of the highly confidential and proprietary upline and downline information by MAX will *neither* reveal *nor* lead to the revelation that a certain former Melaleuca marketing executive "solicited Melaleuca customers and marketing executives, or provided confidential information allowing others to do so and then arranged for the solicited individuals to be sponsored by someone with no connection to Melaleuca." Nordberg Aff., ¶ 6.  Indeed, the upline and downline information would show no such thing because an individual's place in an upline or downline has nothing to do with sponsorship or recruiting. Id.

34.     In addition, contrary to Melaleuca's assertions in its Memorandum in Support of its Motion to Compel, disclosure of the highly confidential and proprietary upline and downline information by MAX will *neither* reveal *nor* lead to the revelation whether a "former Melaleuca marketing executive was wrongly recruited and enrolled in MAX International under a dba, created an LLC or other legal entity, or enrolled under the name of a spouse or close relative." Nordberg Aff., ¶ 7.  Actually, information about dba's, LLC's, spouses or other close relatives, if

indeed such a thing occurred, would be revealed in the search of addresses and email addresses that MAX has already undertaken. Upline and downline information is irrelevant to that inquiry. Id.

35.    Upline and downline information also will *neither* reveal *nor* lead to the revelation of individuals who may be have been recruited through the use of Melaleuca's proprietary and confidential information as no search of the upline or downline would have that information at all. Nordberg Aff., ¶ 8.

36.    Melaleuca has also demanded MAX to search its databases for "individuals who are not specifically named in the subpoena, such as members of the family or household of the named former Melaleuca marketing executive or current or former Melaleuca marketing executives in a Max International organization not named in the subpoena." First, in its database search regarding the individuals named in the original subpoena and of the additional 135 names, such searches would have revealed, if any, members of a named marketing executive's household members who are associated with MAX. Nordberg Aff., ¶ 9. MAX does not track or designate in its system former business ties of its independent associates. Id. It is simply not possible, however, for MAX to conduct a database search of unnamed family members of unnamed Melaleuca marketing executives, or unnamed current or former Melaleuca marketing executives. Id. Additionally, given that there are tens of thousands of MAX associates, it would be impossible and unduly burdensome to speak with each individual associate verbally to gather such information. Id.

III.   **ARGUMENT**

A.   **Forcing MAX to Disclose Its Trade Secrets Regarding Upline and Downline Information Would be Harmful to MAX , Would Not Provide any Relevant Information to Melaleuca, and Would Not Lead to the Discovery of Admissible Evidence.**

The scope of discoverable information requires that information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Utah R. Civ. P. 26(b)(1); Idaho R. Civ. P. 26(b)(1). Furthermore, Utah Rule 45(e) requires attorneys issuing a subpoena to "take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena." Utah R. Civ. P. 45(e)(1); *see also* Idaho R. Civ. P. 45(d) (recognizing the court's authority to protect an individual against subpoenas that are oppressive or impose an undue burden). Discovery may be limited if the subpoena "requires the person to disclose a trade secret or other confidential research, development, or commercial information." Utah R. Civ. P. 45(e)(3)(E); *see also* Idaho R. Civ. P. 26(c), 45(d) (recognizing the authority of the court to protect against disclosure of trade secret or other confidential research, development, or commercial information and to quash or modify a subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies). Additionally, Utah courts have the authority to limit discovery if they determine that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive. . . . [or] the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." Utah R. Civ. P. 26(b)(3)(A), (C). Further,

> [t]he use of discovery should not be extended to permit ferreting unduly into detail . . . [n]or should it be distorted into a 'fishing expedition' in the hope that something may be uncovered. It should be confined within the proper limits of enabling the parties to find out essential facts for its legitimate objective hereinabove stated.

*State ex rel. Rd. Comm'n v. Petty*, 412 P.2d 914, 918 (Utah 1966).

Melaleuca has brought what appears to be a breach of contract/interference with contract claim against the Foellers, the Agrens, and the Miles for their alleged efforts to "raid their former business organization's Independent Marketing Executives and Customers and to persuade those people to leave Melaleuca and go to their new businesses in Max International." Ex. 1, Foeller Complaint, ¶ 8. Melaleuca, through its request for upline and downline information, seeks to compel MAX to produce the very same type of information for which Melaleuca is *suing* its own associates over.   Notwithstanding the Utah Rules and judicial precedent, MAX is ready and willing (as soon as stipulated protective orders are filed) in the Miles and Agren matters to give Melaleuca information concerning who sponsored the identified former Melaleuca associates, whom they sponsored in returned, whom they personally enrolled, and their earnings information.   Indeed, MAX already has produced that information in the Foeller matter.   This information may well be relevant to the claims of alleged "raiding of information" in violation of their respective agreements.

The upline and downline information sought, however, will not reveal the information needed for Melaleuca to advance its claims of breach of contract/interference with contract.  It is an aggressive fishing expedition looking to uncover MAX' s entire genealogy tree and designed

to force MAX to give highly proprietary trade secret information to a direct competitor for no legitimate reason. Indeed, on its face, Melaleuca seeks the names and addresses of each of MAX's over 60,000 associates. As such, MAX should not be compelled to provide the information, which is an unduly burdensome and invasive fishing expedition.

As stated, upline and downline information is highly proprietary, confidential, and competitive information that is the life-blood of MAX and every other network marketing company's business and is a trade secret. The Uniform Trade Secrets Act robustly guards "trade secrets" which are defined to include formulas, patterns, compilations, methods, and processes, that derive actual or potential independent economic value which are generally unknown or not readily ascertainable by other persons who can obtain economic value from its disclosure or use, and is the subject of reasonable efforts to maintain its secrecy. Utah Code Ann. § 13-24-2. A trade secret is a property right and its owner has power to use it as he pleases and to exclude use by others; it is protected against its appropriation or use without his consent. *Microbiological Research Corp. v. Muna*, 625 P.2d 690, 696 (Utah 1981).

In the MAX system, the information sought is so sensitive that it is not even shared with associates and would therefore qualify as a trade secret:

> "a unique combination of generally known elements or steps can qualify as a trade secret, if it represents a valuable contribution attributable to the independent efforts of the one claiming to have conceived it . . . The subject matter of the trade secret must be unknown; it should not be in the public domain nor within the knowledge of the trade, i.e., known only to the owner and possibly several others to whom it was disclosed with the admonition that its secrecy be maintained ..."

Id. at 696.

Accordingly, MAX should not be forced to reveal such proprietary information to a competitor. Just as important, the information sought will not provide the knowledge Melaleuca claims it needs. Upline and downline information will not provide information as to whether, as Melaleuca argues, a "former Melaleuca marketing executive was wrongly recruited and enrolled in MAX International under a dba, created an LLC or other legal entity, or enrolled under the name of a spouse or close relative." Upline and downline information will not show, as Melaleuca wrongly asserts, whether a certain former Melaleuca marketing executive "solicited Melaleuca customers and marketing executives, or provided confidential information allowing others to do so and then arranged for the solicited individuals to be sponsored by someone with no connection to Melaleuca." Because upline and downline placement in MAX's genealogy tree is not driven by or determined by who sponsored or recruited a particular associate or whom that associate sponsors or recruits, it will not be helpful in procuring information relevant to Melaleuca's actual claims against the named defendants in this case. Not only are the identities of MAX's upline and downline distributors highly confidential and proprietary, but due to the unique nature of MAX's compensation tree, MAX associates are not placed in an "upline" or in a "downline" based on who recruited or sponsored the associate, but rather are placed in a particular "upline" or "downline" based on a complex determination subject to certain negotiation, individual relationships, economic factors, and other issues, and thus is not indicative of recruiting or solicitation.

Melaleuca also argues, albeit wrongly, that "all people and entities subsequently sponsored [by an individual recruited using Melaleuca's confidential information] would be

relevant to Melaleuca's substantive claims assessing damages." Melaleuca Mem. in Support, at 2. This is incorrect. Melaleuca's breach of contract/interference with contract damages result from Melaleuca associates actually breaching the IMEA, not from subsequent individuals recruiting or sponsoring for MAX. Again, Melaleuca is impermissibly fishing with this argument. Notably, Melaleuca is simultaneously trying to have *MAX* reveal and disclose its proprietary information, while suing Melaleuca marketing executives on claims that they plundered *Melaleuca's* similar proprietary information. Additionally, the legitimate concerns over disseminating this highly proprietary upline and downline information are not ameliorated by the protections offered in the yet-to-be-filed protective orders. Melaleuca suggests that the information could be designated as "sensitive" and thus revealed to counsel only, but not the parties. However, simply because the names of tens of thousands of associates could be designed as "sensitive" does not mean that Melaleuca has any legitimate right to or need for the information.

Revealing such upline and downline information to counsel only would be a useless gesture as counsel would not be able to utilize such information without comparing the sequestered upline/downline information with Melaleuca's database. The information would have to be shared with Melaleuca and then, once shared with the competitor, would adversely affect non-party MAX's business because it would forever be at risk of Melaleuca or its marketing executives wrongly utilizing that information, or that information being inadvertently leaked, filed, or introduced into evidence. This risk is exacerbated by the fact that MAX is a non-party to the three Idaho lawsuits, and will not be able to adequately protect how the

information is subsequently treated.   The stipulated protective orders are not sufficient to protect this information, and Melaleuca has shown no pressing need for the names of the more than 60,000 associates.

Melaleuca's purported compromise set forth in footnote three of its Memorandum in Support, suggesting that MAX be compelled to produce all downline information and upline information up to five levels above former Melaleuca marketing executives, does not remedy the situation.   In MAX's genealogy compensation tree there is not necessarily any link to recruitment in 1 level, 5 levels, or even 7 levels; therefore proving even limited levels of upline or downline will not provide the information Melaleuca is purportedly seeking, but only puts MAX at risk for revealing highly competitive information and may well put businesses of unrelated associates at risk.  This "compromise" still seeks highly competitive information that has no relevance in these cases.  Again, MAX is not a defendant in any of these cases and, yet, is being asked to produce highly confidential information, the dissemination of which could very well adversely affect MAX's ability to compete in the network marketing arena and may well adversely affect the businesses of MAX's independent associates, also not parties to or represented in these actions.  Because the burden and risk on the non-party MAX so greatly outweighs the usefulness in these cases of the information sought, if *any*, and because the information ready to be provided to Melaleuca directly addresses the claims set forth in the Idaho actions, MAX should not be compelled to produce the additional upline and downline information. *See* Utah R. Civ. P. 45(e).

Indeed, the best source for discovery of whom the Foellers allegedly solicited or not is, in fact, the Foellers, who are parties to the Foeller lawsuit.  It is fundamentally unfair to burden MAX – a non-party – with spending tens of thousands of dollars dealing with overly broad and unreasonable subpoenas in a matter in which they are not involved.

**B.      Melaleuca's Request for Information Concerning Unnamed and Unidentified Former Melaleuca Marketing Executives is Impossible to Comply With**

Melaleuca has requested information from MAX relating to "individuals not specifically named in the subpoena [or in the list of 135 cancellations]," including "members of the family of the named Melaleuca marketing executives" and "other current or former Melaleuca marketing executives in a MAX organization not named in the subpoena." Melaleuca Mem. in Support at 3. MAX simply cannot comply with this request as it has no way of determining whether any of its current associates (other than those for whom Melaleuca has provided names, addresses and email addresses) were associated with Melaleuca.  In addition, unless an individual lives in the same household as an associate, MAX has no way to determine whether associates are family members.  MAX simply does not track this information for its tens of thousands of associates.

MAX, as stated, has searched the names, addresses and email addresses provided by Melaleuca, which would reveal any household members who are MAX associates, any dba's or LLC's formed with the same addresses, and any different names used by a former Melaleuca person using the same address or email address.  MAX is simply unable to conduct a search when it really has no terms to search by.  Melaleuca's additional request that MAX produce information "relating in anyway to individuals or entities that MAX knows or has reason to

know to have had a prior association with Melaleuca" so overly broad and vague that it renders the request also impossible to comply with.  Utah courts have made it clear that discovery requests which are vague, ambiguous, and overbroad are precluded from discovery.  *See, e.g.,* *Evans v. Evans*, 98 P.2d 703, 706, 710 (Utah 1940) (Witness refused to produce its minute book on the ground that it had "no bearing upon these transactions"; in response the court affirmed "That part of the order requiring the witness to bring 'all original books, records and papers of the . . . Corporation pertaining in *any manner* to its business *since the date* of its organization' was too broad and sweeping, hence was of no effect, and the witness was not required to obey it.").

Associates are recruited to MAX by other associates, who are independent from, and not employed by MAX.  MAX cannot know and does not know with whom every one of its associates may have been previously "associated."  MAX does not track or designate in its system former business ties of its independent associates.

Moreover, even if MAX could identify unnamed former or current Melaleuca marketing executives who are distributors of MAX (which it cannot), such information is not relevant to Melaleuca's actions against the Foellers, the Agrens, or the Miles, nor will it lead to the discovery of admissible evidence.  Indeed, Melaleuca has not even made the argument that this requested information is necessary to the three pending Idaho cases.

The recruiting and sponsorship information related to the named defendants has been collected by MAX and produced in the Foeller action.  This burdensome search for unnamed marketing associates is unnecessary for Melaleuca to advance its claims against the Foellers, the

Agrens, and the Miles. Additionally, MAX has already voluntarily gone beyond the requests in the subpoena and collected recruiting and sponsorship information for the 9 additional marketing executives from the 135 who purportedly cancelled.  With this request for information on unnamed marketing executives, Melaleuca is on an improper fishing expedition to find as many possible former marketing executives who may now be with MAX, whether they have anything to do with the breach of contract/interference with contract claims against the named Idaho defendants.  Accordingly, MAX, which is not even a party to any of this litigation, should not be forced to aid Melaleuca in a wide-ranging search that is primarily geared to accumulate more marketing executives for Melaleuca to sue and that has nothing to do with the pending litigation.

**C.     MAX's Objections to Foeller Subpoena Were Timely**

As stated, Although MAX was served with the subpoena on or about August 25, 2009, during that time, MAX was moving offices *and* planning for its distributor associate convention at the Salt Palace Convention Center which occurred the week of September 9, 2009. As such, MAX's legal affairs department did not receive the subpoena until September 8, 2009, and could not get it to outside counsel for response until that date.  On September 8, 2009, MAX's counsel immediately notified Melaleuca's local counsel via email, explained that he had just been made aware of the subpoena, and notified Melaleuca's counsel that MAX objected to the subpoena on the grounds that deposition and document production does not allow a reasonable time for compliance given the short notice and the nature of the information requested, and on the grounds that the subpoena inappropriately requires disclosure of highly confidential and

proprietary information. Counsel further explained that there may be additional objections and, indeed, counsel served its formal objections on September 9, 2009.

In accordance with the Utah Rules of Civil Procedure, MAX properly objected to the subpoena prior to the date for compliance. Utah R. Civ. P. 45(e)(4)(A) ("If the person subject to the subpoena or a non-party affected by the subpoena objects, the objection must be made before the date for compliance."). Melaleuca argues that, even though it knew on September 8, 2009, that MAX objected to the subpoena and the grounds of objection thereof, the fact that MAX did not serve its formal objection until September 9, 2009, renders such objections are untimely. This argument controverts Melaleuca's own statement that "Rule 45 allows parties to a subpoena to rely on a complete response unless they are notified otherwise." Melaleuca Mem. in Support, at 5. Here, Melaleuca was "notified otherwise" and clearly before the date of compliance that MAX had objections and was unable to comply within the time frame, but would endeavor to comply based on Melaleuca's counsel misrepresentation to MAX's counsel that a preliminary injunction hearing was set in the <u>Foeller</u> matter. Moreover, counsel for <u>Foeller</u> indicated that due to his schedule, the compliance date in the deposition already had previously been extended by mutual agreement between Melaleuca and the Foellers. Accordingly, Melaleuca suffered no harm due to the serving of formal objections on the date of compliance and, indeed, is not claiming it suffered any harm by the timing of MAX's objections. Melaleuca is only claiming that MAX technically allegedly missed the deadline by serving the formal objections the day of compliance, even though such date already had been extended by and between the Foellers and Melaleuca.

Additionally, because of the circumstances surrounding the service of the subpoena, the moving issues, and the annual convention issue, neither MAX legal affairs department nor outside counsel were even aware of the subpoena until September 8, 2009. Once they were made aware, they took every immediate possible step to notify Melaleuca's counsel, to make Melaleuca aware of the actual situation, and to notify Melaleuca of MAX's objections as soon as possible. MAX acted completely candidly and entirely in good faith in objecting to the subpoena. As such, MAX's objections to the <u>Foeller</u> subpoena should stand. Utah R. Civ. P. 45(e)(4)(A).

**D.**   **<u>Melaleuca Will Suffer No Harm With Regard to the Timing of MAX's Response to the Subpoena, and, Alternatively, Any Harm Melaleuca May Experience Is Due to Its Own Actions</u>**

Melaleuca argues that the timeliness of MAX's response to the subpoenas puts Melaleuca at risk of irreparable injury due to pending temporary restraining orders in the <u>Miles</u> and <u>Agren</u> cases. Melaleuca Mem. in Support at 6. According to Melaleuca, preliminary injunction hearings in those cases are set for September 28 and 29, 2009, and unless Melaleuca receives information from MAX three days before that date, it will suffer great or irreparable injury. <u>Id.</u> None of Melaleuca's impending "irreparable injury" is related to MAX's responsiveness. Indeed, Melaleuca has been in charge of when it served subpoenas, and the timing of when it sought injunctive relief. Moreover, as implied in the September 29, 2009 email communication from Melaleuca's counsel, and as confirmed by the court in Idaho, the preliminary injunction hearings in the <u>Agren</u> and <u>Miles</u> matters have already taken place and Melaleuca has secured their preliminary injunctions against those defendants, apparently without MAX's documents.

Accordingly, there is no longer a factual basis for Melaleuca's timing arguments and such arguments are moot.  Additionally, with regard to the Foeller matter, Melaleuca's argument is moot because MAX has produced the sponsorship , enrollment , and earnings documents for the named defendants, the individuals named  in the subpoena, and the additional identified individuals found from the 135 cancellations.

Even if the argument was not moot, however, any "harm" to Melaleuca was cause solely by its own actions.   First, although the Agren and Miles temporary restraining orders were already purportedly in place and Melaleuca was well aware of the September 28, 2009 hearing, Melaleuca did not even attempt to serve any subpoena on MAX in those cases until September 16, 2009, and did not actually serve such subpoenas until September 18, 2009.  Because of its own delay, Melaleuca then had to file two Motions to Shorten Time to Respond to Subpoena in the Agren and Miles cases to try and force MAX to comply in a very brief time.  Those motions are still pending, and have not been granted to date.

Instead of timely serving the Agren or Miles subpoenas much earlier in those cases, since it is those cases that have the temporary restraining orders and the pending preliminary injunction hearings, Melaleuca instead first served MAX with the Foeller subpoena, the case in which there is no TRO or preliminary injunction hearing.  The Foeller case does not have any motion for temporary protective order or motion for preliminary injunction and,to MAX's knowledge at this time, does not have any preliminary injunction hearing set, even though Melaleuca counsel inaccurately first represented facts to the contrary to MAX's counsel in and attempt to have MAX respond more quickly.  In the Foeller case, however, Melaleuca continued

to add to MAX's unresolved discovery burden by submitting an additional 135 names for MAX to search on September 16, 2009, and by being unwilling to compromise on their overly broad, unduly burdensome, and irrelevant requests. Melaleuca thus created its own timing issues by the very nature of its overly broad and burdensome subpoenas.

In addition, Melaleuca did not even file its Motion to Compel until September 24, 2009 —four days prior to the purported hearing dates and one day prior to the date Melaleuca insisted MAX produce documents. Thus, Melaleuca has made it impossible for this Court to rule on its request, and instead simply appears to be trying to bully MAX and engage in needless motion practice to further burden MAX.

Finally, despite the fact that MAX had been ready and willing to produce the sponsorship and recruiting information, Melaleuca itself kept holding up that production because it did not yet secure protective orders in all three Idaho cases, and has not provided MAX with date stamped copies of the filed stipulated protective orders in the three cases in Utah. MAX has now finally received verification in the Foeller case and has produced documents, but without these protective orders in the Agren and Miles cases, as Melaleuca well knows, MAX cannot produce the documents. Accordingly, it has been solely Melaleuca's actions that have left these subpoena issues unresolved and, as such, any harm that may be caused could have been prevented by Melaleuca and should not be a factor in the Court's decision on this Motion to Compel.

## IV.   CONCLUSION

Based on the above arguments, and the affidavits and exhibits filed together herewith, MAX requests that this Court deny Melaleuca's Motion to Compel, and specifically deny

Melaleuca's requests that: (1) MAX produce any downline or upline information for former Melaleuca marketing executives, (2) MAX produce information on unnamed, unidentified Melaleuca marketing executives, and/or (3) that MAX respond to the subpoena within three days of the earliest scheduled preliminary injunction hearing.   MAX is ready, willing, and able to produce the sponsorship information it has gathered for the 14 identified individuals, and the additional 9 individuals discovered from the list of 135, and will do so as soon as Melaleuca has provided evidence that the stipulated protective order has been fully executed and filed in all three Idaho cases and all three Utah cases.

Respectfully submitted this 7th day of October, 2009.

ERIK A. CHRISTIANSEN
KATHERINE VENTI
PARSONS BEHLE & LATIMER
Attorneys for MAX International, LLC

4825-7576-0388.1

## CERTIFICATE OF SERVICE

I hereby certify that I did on this 7th day of October, 2009, have caused to be sent a true

and correct copy of the above pleading via first class mail, postage pre-paid to the following:

Brent V. Manning
MANNING CURTIS BRADSHAW & BEDNAR
170 South Main Street, Suite 900
Salt Lake City, Utah 84101

Richard J. Armstrong
WOOD CRAPO
500 Eagle Gate Tower
Salt Lake City, Utah 84111

Curtis R. Hussey
HILL JOHNSON & SCHMUTZ
Riverview Plaza, Suite 300
4844 North 300 West
Provo, Utah 84604

Katherine Venti

# EXHIBIT 1

CASE ASSIGNED TO
JUDGE JON J. SHINDURLING

Curt R. Thomsen, Esq., ISB #2072
T. Jason Wood, Esq., ISB #5016
THOMSEN STEPHENS LAW OFFICES, P.L.L.C.
2635 Channing Way
Idaho Falls, ID 83404
Telephone (208) 522-1230
Fax (208) 522-1277

Attorneys for Plaintiff

IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF BONNEVILLE

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation, | Case No. CV-09-2616 |
| Plaintiff, | |
| v. | COMPLAINT AND DEMAND |
| RICK FOELLER and NATALIE FOELLER, | FOR JURY TRIAL |
| Defendants. | |

COMES NOW plaintiff Melaleuca, Inc., by and through counsel of record, and for cause of

action against Defendants, alleges as follows:

1.    Melaleuca, Inc., is an Idaho corporation with its principal place of business in

Bonneville County, State of Idaho. Bonneville County, State of Idaho is the place of principal injury

or damage related to the actions of Defendants therein.

1 -    COMPLAINT AND DEMAND FOR JURY TRIAL

2       Defendants Rick and Natalie Foeller are residents of Ontario, Canada.

3       Defendants have maintained business contacts with the State of Idaho, out of which arise of operative facts pertaining to the present action, have contracted with Melaleuca, Inc., in the State of Idaho, have been trained in the State of Idaho, and have sent money to and received products and substantial commissions from the State of Idaho. Defendants are therefore personally subject to jurisdiction of the courts of the State of Idaho pursuant to Idaho Code §5-514 and the due process clause of the Fifth Amendment to the United States Constitution.

4.      Defendants have committed tortious acts directed at Melaleuca, Inc., in the State of Idaho, and have intended to and have caused damage to Melaleuca, Inc., in the State of Idaho. Defendants are subject to jurisdiction of the courts of the State of Idaho for this additional reason, pursuant to Idaho Code §5-514 and the due process clause of the Fifth Amendment to the United States Constitution.

        Defendants have expressly consented to personal jurisdiction by the Courts of the State of Idaho over disputes such as this one, which turn on violations of Melaleuca's contractual prohibition against Marketing Executives recruiting Melaleuca Customers for another business.

5.      On or about September 15, 1999, Defendants entered into an Independent Marketing Executive Agreement (IMEA) with Melaleuca, Inc., and Defendants functioned thereafter as independent contractors acting through the agreement with Melaleuca, Inc. Defendants agreed to comply with and honor the IMEA terms and conditions, as well as Policies, as they were in existence, and as further amended, both during their relationship with Melaleuca, and, with respect to some Policies, after any termination of the Independent Marketing Executive Agreement relationship.

7    In November 2008, Defendants terminated their IMEA. Shortly thereafter, Melaleuca notified Defendants that they had violated the terms and conditions of that agreement. The activities of Defendants before and since November 2008 have been directed at Melaleuca, Inc., with the intent to interfere with Melaleuca, Inc.'s agreements with its other Independent Marketing Executives (IME's) and/or Customers.

8    Defendants have, in violation of their agreements, and in violation of controlling law, used confidential and proprietary business information and trade secrets in an effort to raid their former business organization's IME's and Customers and to persuade those persons to leave Melaleuca and go to their new business in Max International ("Max"). Defendants willfully violated the policies of Melaleuca, Inc., in their activities, including Policy 20, concerning non-solicitation of Melaleuca Marketing Executives and Customers, and policies prohibiting the use and dissemination of confidential and proprietary information, and intentionally and tortiously interfered with Melaleuca, Inc.'s agreements with other Melaleuca IME's and/or Customers.

9.    The actions of Defendants have caused, and will continue in the future to cause, injury and damage to Melaleuca, Inc.'s business and will result in loss, damage or other effects as intended by Defendants. Melaleuca, Inc., is entitled to recover from Defendants all past and future costs, damages, and losses incurred as a result of the improper actions of Defendants, in an amount to be proven at the time of trial or at the time judgment is requested.

10.    The amount in controversy is in excess of $10,000, and is otherwise sufficient to confer jurisdiction in the District Court and not the Magistrate's Division of the District Court.

1 .   Melaleuca, Inc., is further entitled to an order from this Court enjoining Defendants from violating their agreements with Melaleuca, Inc., to include actions in recruiting Melaleuca independent Marketing Executives, clients and Customers in contravention of their agreements.  The actions of Defendants have caused, and will in the future cause, irreparable injury and harm to Plaintiff.

1 .   Melaleuca, Inc., is further entitled to recover its attorney fees and court costs incurred therein in prosecuting this action pursuant to Idaho Code sections 12-120 and 121, and per the controlling agreements.

WHEREFORE, plaintiff Melaleuca, Inc. requests the judgment, order and decree of this court against Defendants, as follows:

1       For judgment against Defendants for past and future costs, losses and damages sustained by Melaleuca, Inc., as a result of the improper and unlawful actions identified above;

2       For a preliminary and permanent injunction directing Defendants to cease and desist from raiding Melaleuca independent Marketing Executives, clients and Customers, for the time periods agreed by Defendants, which time period should begin to run from the time of judgment in order to give Melaleuca the compliance agreed, for the time period agreed, without violation;

3       For an award of Plaintiff's attorney fees;

4       For an award of Plaintiff's cost of suit incurred therein;

5       Plaintiff reserves the right to seek punitive damages under the provisions of Idaho statute by subsequent motion and order; and

4 -   COMPLAINT AND DEMAND FOR JURY TRIAL

6.      For such other and further relief as the court deems just and equitable under the

circumsta ices.

D ATED this 29th day of April, 2009.

THOMSEN STEPHENS LAW OFFICES, P.L.L.C.

By: _____

T. Jason Wood, Esq.

## DEMAND FOR JURY TRIAL

F aintiff Melaleuca, Inc., requests trial by jury of not less than 12 persons as to all issues

triable t a jury in this matter.

I ATED this 29th day of April, 2009.

THOMSEN STEPHENS LAW OFFICES, P.L.L.C.

By: _____

T. Jason Wood, Esq.

# EXHIBIT 2

ERIK A. CHRISTIANSEN (7372)
KATHERINE VENTI (9318)
PARSONS BEHLE & LATIMER
Attorneys for MAX International, LLC
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

---

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>RICK and NATALIE FOELLER,<br><br>  Defendants. | **AFFIDAVIT OF KATHERINE VENTI IN SUPPORT OF MAX INTERNATIONAL, LLC'S OPPOSITION TO MELALEUCA, INC.'S MOTION TO COMPEL**<br><br>Idaho Case No.: CV-09-2616<br><br>Utah Case No.: 090914033<br><br>Hon. Judge Denise Lindberg |

STATE OF UTAH     )
                   : ss.
COUNTY OF SALT LAKE  )

I, Katherine Venti, hereby swear under the penalties of perjury that the following assertions are true:

1.    I have personal knowledge of the statements of this affidavit, except for statements premised upon information and belief. As to statements premised upon information and belief, I do believe said statements to be true and will competently testify to the same if called upon to do so.

2.   I am an attorney licensed to practice before the highest courts in the state of Utah and I am counsel of record for MAX International, LLC (hereinafter "MAX") in the above-referenced matter.

3.   MAX has its principal place of business in Utah, and is not a party to any of Melaleuca's various Idaho cases underlying this discovery dispute.

4.   On or about August 25, 2009, Melaleuca served MAX, a non-party, with a Rule 30(b)(6) Deposition Subpoena Duces Tecum to Max International, LLC, through a miscellaneous action here for Melaleuca, Inc. v. Rick and Natalie Foeller, Seventh Judicial District, Idaho, Case No. CV-2009-2616, commanding a deposition of a MAX representative and production of a massive amount of highly confidential and proprietary documentation allegedly related to Melaleuca's litigation pending in Idaho.  Despite the voluminous amount of material and information requested, the subpoena was issued giving short notice to MAX, demanding compliance on September 9, 2009, a mere two weeks after service.

5.   On September 8, 2009, MAX's outside counsel immediately notified Melaleuca's local counsel via email, explained that he had just been made aware of the subpoena, and notified Melaleuca's counsel that MAX objected to the subpoena on the grounds that deposition and document production does not allow a reasonable time for compliance given the short notice and the nature of the information requested and on the grounds that the subpoena inappropriately requires disclosure of highly confidential and proprietary information.  Counsel for MAX further explained that there may be additional objections as well.  More formal objections to the Foeller Subpoena were then timely served on September 9, 2008.  **A true and correct copy of the September 8, 2009 email correspondence between counsel for MAX and counsel for Melaleuca is attached hereto as Exhibit A.**

6.     On September 8, 2009, counsel for MAX and counsel for Melaleuca conferred regarding the subpoena and MAX's objections; and, contrary to Melaleuca's counsel's representations to MAX's counsel on September 8, 2009, that there was a pending preliminary injunction hearing in the Foeller matter, MAX determined that there was, in fact, no such pending hearing after speaking with defense counsel, Rick Armstrong, Esq. and checking with the Idaho Court.

7.     In a good faith effort to avoid unnecessary motion practice, MAX's counsel sought to comply with Melaleuca's discovery requests by clarifying and limiting the scope of Melaleuca's discovery requests, establishing mutually convenient deposition dates for all involved, and properly protecting any highly confidential or proprietary trade secret information in excess of Melaleuca's discovery needs.

8.     On September 9, 2009, pursuant to Rule 45 of the Utah Rules of Civil Procedure, non-party MAX, served its Objection of Max International, LLC to Rule 30(b)(6) Deposition Subpoena Duces Tecum in the Foeller matter.   **See Ex. E to Melaleuca's Memorandum in Support of it Motion to Compel.**  MAX objected primarily on the grounds that the request was unduly burdensome considering MAX was not a party to the lawsuit pending in Idaho and the information sought was highly confidential and proprietary operational information and not calculated to obtain information related to Melaleuca's underlying case.  In this regard, the Subpoena is seeking, among other things, MAX's multi-level marketing upline and downline information, which information is irrelevant to Melaleuca's Idaho claims and, more importantly, is highly confidential and proprietary information, and which, if disclosed, would provide Melaleuca, a competing multi-level marketing company, with the names and contact information of virtually all of MAX's approximately 60,000 independent distributors, which MAX has spent

tremendous time and resources to acquire, and which MAX vigorously protects as a trade secret. Indeed, by their subpoenas, Melaleuca is seeking the names and contact information of MAX's entire independent associate sales force, constituting tens of thousands of individuals. Such a request is not only overbroad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, but is Melaleuca's back-door attempt to acquire MAX's trade secrets, which it has spent considerable sums to assemble.

9.      In addition to its formal Objections, on September 9, 2009, MAX's counsel also issued a meet and confer letter setting forth its concerns and objections to Melaleuca's Rule 30(b)(6) Deposition Subpoena Duces Tecum to MAX in the Foeller matter and, seeking to reach an agreement on the scope of the subpoena, a stipulated protective order in the Foeller matter, and deposition times for that subpoena. Also, in the September 9, 2009 meet and confer letter, MAX made Melaleuca's counsel aware that MAX had moved offices and conducted its distributor associate convention at the Salt Palace Convention Center during the week of September 9, 2009; and that these events caused MAX to experience exemplary circumstances which rendered the Melaleuca's limited time for production demand even more difficult to comply with. **Id.**

10.      MAX subsequently drafted a Stipulated Protective Order.  Although MAX's counsel and counsel for Defendants Rick and Natalie Foeller have signed the Stipulated Protective Order and provided it to Melaleuca's counsel,   Melaleuca's counsel did not provide evidence that Melaleuca has properly filed it with this Court in Utah until September 29, 2009 and has not provided evidence that it has been filed with the Idaho Court by producing to MAX a date stamp copy of the filed Stipulated Protective Order.

11.     On September 15, 2009, counsel for Melaleuca and counsel for MAX had a telephone conference to clarify and properly limit the scope of the discovery demands in the Foeller matter. During that telephone conference, Melaleuca's counsel informed MAX's counsel that it would be issuing subpoenas in other matters. MAX's counsel informed Melaleuca's counsel that it would object to multiple depositions on the same issues and documents and would likely have the same issues in other matters as in the Foeller matter.

12.     On September 8, 2009, in the Miles matter, the Idaho Court apparently entered a temporary restraining order prohibiting Gwendolyn and Lydell Miles from using or disclosing Melaleuca's proprietary and confidential information. A hearing regarding that order and the entry of a preliminary injunction, which appears to have been extended at least once, was scheduled for Monday, September 28, 2009, in Idaho State Court wherein, as MAX understands, Melaleuca obtained preliminary injunctions against the Agrens and the Miles.

13.     Late in the afternoon on September 16, 2009, just prior to a second scheduled telephone conference in the Foeller matter where the attorneys were to discuss discovery dispute and service issues, Melaleuca sent counsel for MAX a courtesy copy of a subpoena seeking information from MAX, a non-party to Melaleuca's Idaho litigation, regarding Melaleuca's claims against Gwendolyn and Lydell Miles, who are  defendants in another Melaleuca Idaho cases. As counsel did not yet have permission to accept service, which was going to be discussed in the phone conference, it could not accept such service and the Subpoena was formally served on MAX on September 18, 2009.

14.     On September 2, 2009, in the Melaleuca, Inc. v. Laraine and Raymond Agren matter, the Idaho Court apparently entered a temporary restraining order prohibiting Laraine and Raymond Agren from using or disclosing Melaleuca's proprietary and confidential information.

15.     On September 16, 2009, Melaleuca served a courtesy copy of a subpoena seeking information from MAX, a non-party to Melaleuca's Idaho litigation, regarding Melaleuca's claims against Laraine and Raymond Agren, who are defendants in another Melaleuca's underlying Idaho cases.  As counsel did not yet have permission to accept service, which was going to be discussed in the phone conference, it could not accept such service and the Subpoena was formally served on MAX on September 18, 2009.  Also, on September 16, 2009, again just prior to a scheduled telephone conference between Melaleuca's counsel and MAX's counsel, filed an Ex Parte Motion to Shorten Time to Respond to Subpoena in the <u>Agren</u> and <u>Miles</u> matters, which MAX has opposed.  No ruling has been made on the Ex Parte Motion to date.  The Subpoena thus did not provide sufficient time for MAX to respond pursuant to Rule 45.

16.     On September 16, 2009, MAX's counsel sent a letter to Melaleuca's counsel responding to Melaleuca's letter issued on September 15, 2009, outlining MAX's concerns, agreements, and the scope of search it would undertake in complying with the subpoenas as discussed in the September 15, 2009 telephone conference, including providing to Melaleuca information concerning who sponsored the identified Melaleuca marketing executives in the MAX organization, whom those persons in turn sponsored, and who was personally enrolled by such identified persons.  MAX completed its search of that information on September 22, 2009.

17.     Meanwhile, on September 17, 2009, Melaleuca's counsel forwarded to counsel for MAX a list of 135 names, addresses and email addresses of individuals who purportedly cancelled their subscription to Melaleuca.  **A true and correct copy of the September 17, 2009, email from Josh Chandler is attached hereto as Exhibit B.**  These additional 135 names were not previously listed or identified in any of the three prior subpoenas, Melaleuca had no idea whether these 135 individuals were indeed associated with MAX, and were simply fishing for

information on cancelled subscriptions.  Id.  Despite the fact that the additional names were not included in any subpoena, MAX, in an effort to cooperate and facilitate discovery in the Idaho cases, voluntarily undertook a search of the names, addresses, and email addresses provided by Melaleuca, the majority of which are *not* associated with MAX.  Indeed, MAX out of the 135 names provided, found only an additional 9 entities that had not been located in prior searches performed with the initial subpoena information.

18.     It was the understanding of all the parties that because the information sought by Melaleuca is intended to be used in the Foeller case, the Agren case, *and* the Miles case, none of the MAX highly confidential and proprietary information regarding its associates can be produced until all protective orders are entered of record in the respective cases. On September 22, 2009, counsel for Melaleuca circulated for signature Stipulated Protective Orders in the Agren and Miles cases, which counsel for MAX signed and returned the same day.  However, as of September 24, 2009, the date of filing of Melaleuca's Motion to Compel, Melaleuca notified MAX counsel that it still had not received signed protective orders from other counsel and, consequently, has not yet filed the Stipulated Protective Orders.  **A true and correct copy of the September 21, 2009 email from Brent Manning proposing protective orders, the September 22, 2009 email from Erik Christiansen circulating the Miles and Agren Stipulated Protective Orders, and the September 24, 2009 email from Brent Manning acknowledging he has not yet signed the protective orders, are attached collectively hereto as Exhibit C.**

19.     On September 29, 2009, however, Melaleuca finally forwarded verification that the stipulated protective order had been entered of record in the Foeller matter.  Melaleuca's counsel further explained: "The defendants in the other actions have not signed the Protective Order prepared in those cases. I understand that Agrens have defaulted and the Miles did not

appear for the Preliminary Injunction hearing and the injunction was entered against them." **A true and correct copy of the September 29, 2009 email from Brent Manning is attached hereto as Exhibit D.**

20.     Based on the above representations, on September 30, 2009, MAX produced the sponsorship, enrollment and earnings information in the <u>Foeller</u> case only. Pursuant to the Stipulated Protective Order, these documents shall be used solely for the prosecution or defense of the <u>Foeller</u> matter and cannot be used in any other case. **A true and correct copy of the September 30, 2009 letter to Brent Manning and Richard Armstrong is hereto attached as Exhibit E.**

21.     Although MAX had been ready and willing to produce and disseminate information regarding its agreed database searches on the individuals named in the original subpoenas and the additional 135 names, it could not produce such information until it had verification that the protective orders have been fully executed, and filed. Without such protective orders, MAX still cannot produce documents for use in the <u>Miles</u> or <u>Agren</u> matters, nor can the information provided in the <u>Foeller</u> case be used in those matters.

22.     In addition, as the September 29, 2009 communication from Melaleuca's email implies, and as confirmed by the court in Idaho, the preliminary injunction hearings in the <u>Agren</u> and <u>Miles</u> matters have already taken place and Melaleuca has secured their preliminary injunctions against those defendants. Accordingly, there is no longer any basis for Melaleuca's timing arguments, and no need for discovery from MAX.

23.     As a non-party to Melaleuca's out-of-state litigation, MAX will be subjected to undue burden, excessive cost and hardships if it is forced to comply with Melaleuca's unreasonable and unnecessary requests to produce all upline and downline information. If MAX

is forced to disclose the names and contact information for each of its 60,000 associates, it will be unfairly and inappropriately forced to disclose highly confidential and proprietary trade secrets, which are not likely to lead to the discovery of admissible evidence, and which MAX needs to protect from being discovered by a competing network marketing company.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED this 7th day of October, 2009.

_____
KATHERINE VENTI

SUBSCRIBED and SWORN to before me

This 7th day of October, 2009.

_____
NOTARY PUBLIC

ALEXUS PARKER
Notary Public
State of Utah
Comm. No. 576921
My Comm. Expires Jan 5, 2013

# EXHIBIT A

**From:** Brent Manning [mailto:BManning@mc2b.com]
**Sent:** Tuesday, September 08, 2009 4:39 PM
**To:** Christiansen, Erik
**Cc:** jchandler@melaleuca
**Subject:** Re: Melaleuca, Inc. v. Rick & Natalie Foeller

Eirk,

I am following up on our telephone call in which you advised me that Max International would not show up for the deposition tomorrow because of the circumstances you described below so that the attorney should not travel from Idaho Falls for the deposition. I have forwarded that information to the Idaho Falls counsel.

I do not believe that the excuse given is sufficient to justify postponement of the deposition. In any event Melaleuca is willing to reschedule the deposition to another firm time this week to accommodate Max International. These issues relate to a preliminary injunction so that the deposition cannot be postponed for a long time.

With regard to your confidentiality concern, such issues usually are handled by a protective order. Please send to Josh Chandler, copied on this e-mail, your proposed protective order.

Please get me a date this week as soon as possible.

Brent

Brent V. Manning
Manning Curtis Bradshaw & Bednar LLC
170 South Main Street, Suite 900
Salt Lake City, Utah  84101
801-363-5678
Fax 801-364-5678
BManning@mc2b.com
------------------------------------------------------------------

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient,

please contact the sender by reply email and destroy all copies of the original message.
====================================

>>> "Christiansen, Erik" <EChristiansen@parsonsbehle.com> 9/8/2009 4:18 PM >>>
Brent:

I just received a call about 5 minutes ago from the in-house V.P. at Max International, LLC ("Max") who deals with legal issues. Due to the move of Max's offices last week, the in-house V.P. did not receive the subpoena until this afternoon, even though it was served on the company sometime around August 27. (I have not yet seen the subpoena to verify the service date).

Obviously, Max is not in a position to go forward with the deposition or to produce documents tomorrow. In addition, Max's convention is taking place this week, and much of the office is out for the convention.

We thus are going to need to reschedule the deposition and document production for a mutually convenient time.

Also, although I have not yet seen the subpoena, I understand that some of the information requested concerning, among other things, downlines and uplines, for example, is highly confidential and proprietary information.

Accordingly, please be informed that Max hereby objects to the subpoena on the grounds that the deposition and document production does not allow a reasonable time for compliance given the short notice and the nature of the information requested, and that the subpoena inappropriately requires disclosure of highly confidential and proprietary information. There may be additional objections as well once we've actually seen the subpoena.

I wanted to give you as early as notice as possible under the circumstances, so that we can work together to get the information and deposition taken care of on a mutually convenient schedule.

Can you let us know if there is a stipulated protective order in the case? If so, does it have an attorneys' eyes only designation? If so, could you send us a copy of the stipulated protective order for our review?

Thank you for your professional courtesy in this matter.


Erik A. Christiansen
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 532-1234

# EXHIBIT B

**Venti, Katherine**

| | |
|---|---|
| **From:** | Josh Chandler [jchandler@Melaleuca.com] |
| **Sent:** | Thursday, September 17, 2009 3:47 PM |
| **To:** | 'Brent Manning' |
| **Cc:** | Christiansen, Erik; Venti, Katherine; Jason Wood |
| **Subject:** | RE: Meleleuca |
| **Attachments:** | cancellations .xls |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Please see the attached list of cancelled individuals.  There are 135 persons.

---

**From:** Brent Manning [mailto:BManning@mc2b.com]
**Sent:** Wednesday, September 16, 2009 5:54 PM
**To:** Erik Christiansen; Katherine Venti
**Cc:** Josh Chandler; Jason Wood
**Subject:** Meleleuca

Erik,

Her is the contact information that Melaleuca has for the person on deposition topics 1. a through e.

Brent

Laraine and Raymond Agren

Laray of CA, Inc.

PO Box 188

Honomu, HI 96728

808.938.5551

808.964.3450

laray50@iglide.net

<u>Older information</u>

14224 Bald Mountain Road

Penn Valley, CA 95946

530.432.2191


Holly and Jeff Lachappell

H & J Marketing LLC

18271 Norlene Way

Grass Valley, CA 95949

530.477.2894

530.272.3262

530.559.6379

530.272.1874 fax

<u>spingirlspin@yahoo.com</u>


<u>Older information (Jeff's mother)</u>

Rose Lachappell

1072 E Main Street

Grass Valley, CA 95945

916.273.1440


Chuck and Cheryl Alimena

4497 McRoberts Dr

Mathers, CA 95655

916.369.1221

916.205.3369

cherylalimena@yahoo.com

older information

26 Lochness Ct

Sacramento, CA 95826

916.381.3369

Gwendolyn and Ledell Miles

LMGM Physical and Financial Wellness

1154 Greenridge Lane

Lithonia, GA 30058

770.498.0232

678.576.1644

770.498.0712

770.498.4815 fax

miles_art_deco@mindspring.com

Other Information (son)

Ledell Miles, Jr.

315 Amesbury Dr Apt 327

Lafayette, LA 70507

770.265.4620

ledelljr@yahoo.com

older info

PO Box 7123

Tuskegee, AL 36088

334.725.5461

ledellmiles1024@hotmail.com


Sonia and James Atchison

2101 Highland Club Dr SE
Conyers, GA 30013

678.571.6464

404.822.1935

770.760.1149

770.760.1951 fax

jamesandsonia@comcast.net

jsawellness@iglide.net


Natalie & Rick Foeller

18 Crestwood Ave

Peterborough, ON k9J 1M8

natalief@iglide.net


Rachelle & Ronny Riley

5770 Fairington Farms Ct

Lithonia, GA 30038

404.246.4311

riley_rachelle@yahoo.com


Jessie Brown

2461 Winshire Drive

Decatur, GA 30035

678.508.5551

770.808.3629

totalwellnessinc@yahoo.com


MaryBibb

A & J Security Inc

2424 Winshire Dr

Decatur, GA 30035

404.502.9207

jessieabrown@yahoo.com


Josie Lewis

45287 George Drive

Hammond, LA 70401

985.542.5519

985.351.7270

985.320.1146

execjosie@yahoo.com


Larry and Denise Adebesin

6283 Robins Trce

Stone Mountain, GA 30087

770.733.6822

301.257.8857

lifeenrichmentcoach@gmail.com

*Nicki Bowden*

*Policy Administration Manager*

*Melaleuca, Inc.*

*208.534.2076*

*nbowden@melaleuca.com*

Brent V. Manning
Manning Curtis Bradshaw & Bednar LLC
170 South Main Street, Suite 900
Salt Lake City, Utah  84101
801-363-5678
Fax 801-364-5678
BManning@mc2b.com
-------------------------------------------------------------

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
==================================

| Name | Address1 | Address2 | City |
|---|---|---|---|
| Evelyn E Crambes | 8717 CYPRESSWOOD AVE | | LAS VEGAS |
| Paige s Bradbury | PO Box 10844 | | HONOLULU |
| Jennifer N Wike | HC 2 Box 6923 | | KEAAU |
| Christine C Kahn | 1169 TULIP CT | | SAN LUIS OBISPO |
| Diana H Perry | 7616 LAWNVIEW AVE | | CLEVELAND |
| Annette B Riebe | 87 La Jota | | ANGWIN |
| Dianthe K or Daryll J Castillo | 1731 HALE O KEA ST | | HILO |
| Rene Hamlin | 9651 Appalachain Drive | | SACRAMENTO |
| Rodyan O Iraheta | PO BOX 5671 | | SOUTH SAN FRANCISC |
| Henry Joseph Dansereau | 76 GREENBANK AVE | | OROVILLE |
| Olivia N Osborne | 10714 BALFOUR REACH GRASS VALLEY | | TRUCKEE |
| Delia S Sancho | 263 CURTIS AVE | | GROVELAND |
| Lori A Mauser | 43216 N COUNTRY LN | | ZION |
| Teresa R Thomas | 6507 GREENWOOD AVE N | | SEATTLE |
| Bridget Wood | 1141 E Welsh Rd | | AMBLER |
| Christina Burton | 445 MCCLURE CIR | | SPARKS |
| Cynthia Webster | 13746 Green Rd | | WALTON |
| Wilma P Wood | 94-317 HILIHUA WAY | | WAIPAHU |
| Ann Cooksey | 545  A PETROS CIR | | PENSACOLA |
| Debra M Chase | 22926 WRENCREST DR | | CALABASAS |
| Debbie Currie | 542 LITTLE RIVER WAY | | SACRAMENTO |
| GLENN OR JEANETTE SMITH | PO BOX 322 | | CAMPTONVILLE |
| Mandi A Pike | 2160 DENA DR | | CONCORD |
| Sylvia A Dewitt | 1415 SANTA FE AVE | | BERKELEY |
| Richard A Farrar | 228 COMMERCIAL ST | | NEVADA CITY |
| Michele  Woods | 17174 ALEXANDRA WAY | | GRASS VALLEY |
| Deborah A Arrighini | 2835 GAYLE LN | | AUBURN |
| Renae L Salvi | 1621 BOWLING GREEN DR | | SACRAMENTO |
| Ruby Jean Scott | 6417 CAPITAL CIR        #9 | | SACRAMENTO |
| Tracey L Hall | 7304 Grenola Way | | CITRUS HEIGHTS |
| Breanna M Ruthrauff | 4477 MCROBERTS DR | | MATHER |
| Mary C Burns | 112 MARBLE CANYON DR | | FOLSOM |
| Leslie J Carlisle | 956 Greenstar Way | | SACRAMENTO |
| Dani L Heflin  or  Steven E Myers | 2621 BRAVADO DR | | RNCHO CORDOVA |
| Debra L Smith | 1700 ROLLESTON PL | | EL DORADO HILLS |
| Francisco A Diaz | 1960 West 4th Street | | BROOKLYN |
| Pamela D Stegall | 1714 HAVILON DR SW | | ATLANTA |
| Leroy A McGarity | 285 CENTENNIAL OLYMPI UNIT 705 | | ATLANTA |
| Darryl L Williams | 2780 TONEY DR | | DECATUR |
| Daisy Billingsley | 937 STONEWALL DR SE | | ATLANTA |
| Joy A Mazyck | PO BOX 61291 | | JACKSONVILLE |
| Amiko Johnson | 4920 Fenbrook Dr | | STONE MTN |
| Albert Magill | 2445 Dunn Ave Apt 608 | | JACKSONVILLE |
| Charmaine D Hylton-Leslie | 6027 Southland Dr | | STONE MOUNTAIN |
| Michael or Rameka Minter | 6134 Wellwater Way | | LITHONIA |

| Name | Address | City |
|---|---|---|
| Jamillah C Muhammad | 190 Bramble Bush Trl | COVINGTON |
| Ruby Tatum-Wallace | 1178 BERRYHILL DR | LITHONIA |
| Carman Gilmore | 415 E 78TH ST | KANSAS CITY |
| Anika Carr | 285 Lochwood Trl | LAWRENCEVILLE |
| Lois Thompson | 3942 Boring Rd | DECATUR |
| Hubert  or Lori A Miles | 5457 OLD COBLE ST | CANAL WINCHESTER |
| Dwayne Williams | 1441 Manotak Ave Apt 503 | JACKSONVILLE |
| Wayne  Myles | 14095 WHITTINGTON LN | NATALBANY |
| Angelica B Lewis | 1601 GARDNER PARK DR | LAWRENCEVILLE |
| Joan or Leroy Francis | 5956 Valley Green Rd | LITHONIA |
| Deanna  Williams | PO Box 61696 | JACKSONVILLE |
| Gwendolyn L. Leslie | 955 STONEWALL DR SE | ATLANTA |
| Sandra Logan | 6122 Castlegate Dr | RIVERDALE |
| Milton Williams | PO BOX 66042 | JACKSONVILLE |
| Annie Reeves | 1588 Atkinson Rd Ste 106 | LAWRENCEVILLE |
| Kevin or Felicia Doby | 12057 OLMSTEAD DR | FAYETTEVILLE |
| Judy Jackson | HOME RIDGE APTS          2281 MIDWAY RD APT | DOUGLASVILLE |
| Maurice L Moore | 1333 Dunn Ave Apt 307 | JACKSONVILLE |
| SaBorria Stewart | 3150 S Nellis Blvd Apt 1159 | LAS VEGAS |
| AngelOscar Castellanos-Rodrigue | 656 Browning Ln SE | CONYERS |
| Jimmicka Colbert | 2290 Manhatten Dr          APT 9 | BAKER |
| Steve Whitelaw | 1904 Cypress Wood Dr | BAKER |
| William Atchison | 1784 Cherry Valley Cir SE | ATLANTA |
| Vivian O Brown | 1610 SALINA ST | AUSTIN |
| Geneva Fletcher | 8601 ROBERTS DR APT 16-10 | ATLANTA |
| Rachel R Atchison | 1784 CHERRY VALLEY CIR SE | ATLANTA |
| James Manson | 12153 Littlewoods Dr | BATON ROUGE |
| Althea Watkins | 2924 Lighthouse Way | CONYERS |
| Monica Y Weems | 2798 Peek Rd NW Apt 315 | ATLANTA |
| Joann  White | 6550 BROWNMILL FERRY DR | LITHONIA |
| Akeim Sears | 1946 GLADEVIEW PKWY | STONE MOUNTAIN |
| Jackilin A Creary-Wright | 6093 Fairington Farms Ln | LITHONIA |
| Shernell N Liu | 6079 FAIRINGTON FARMS LN | LITHONIA |
| Towanda M Pitts | 189 DEWEY WARNOCK RD | EAST DUBLIN |
| Tammie Miller | PO Box 1073 | FAYETTEVILLE |
| Patrice Brown | 215 CONCORD LN | JONESBORO |
| Ericka Thompson | 2429 BRIANNA DR | HAMPTON |
| Tamika  Gilliam | 2023 Smithfield Ave | ELLENWOOD |
| Lori C Armstrong | 305 NEWBURGH PL | STOCKBRIDGE |
| Rodney Lowe | 40 Cindy Cir | COVINGTON |
| Barbara A Farmer | 404 Claridge Park Dr | MORROW |
| Margie Smith | 18247 Murray Hill St | DETROIT |
| Rudean Russell | 3299 SUGAR CREEK TRCE SE | ATLANTA |
| Mary Taylor | 4694 RIDGEWOOD DR | FOREST PARK |
| Ada Ewo | 6138 RAINTREE BND | LITHONIA |
| Jennifer Hunt | 4218 PINE CIR | FOREST PARK |
| Darryl D Cunningham | 2853 Norfair Loop | LITHONIA |

| Name | Address | City |
|---|---|---|
| Vera M Brown | 7889 TAYLOR RD | RIVERDALE |
| Gay-Linn E Jasho | 3450 Leisure Ln | ATLANTA |
| Angela Carter | 633 WINDCHASE PL | LITHONIA |
| Beverly Harris | 5480 Lucile Ave | STONE MOUNTAIN |
| Chandra Alphabet | 1906 Manhattan Pkwy | DECATUR |
| Marie Richards | 6791 DANFORTH WAY | STONE MOUNTAIN |
| Roxanne Oliver | 2175 RIVER ACRES CT | LITHONIA |
| Devard or Fredrica Ferguson | 4129 MEDLOCK RIVER CT | SNELLVILLE |
| Veronica Gerald | 6179 MARBUT FARMS CHASE | LITHONIA |
| Paula Neal | 6256 Hillandale Dr Apt 915 | LITHONIA |
| Michelle Bass | 3384 Hidden Stream Ct SOURT | STOCKBRIDGE |
| Larry B Smith | 65 STONE RIDGE WAY | COVINGTON |
| Samira Faraj | 2360 PARK ESTATES DR | SNELLVILLE |
| Rose Mcgraw | 175 OAK HILL DR | COVINGTON |
| Hope C West | 4542 Parkview Sq | ATLANTA |
| Delia Walters | 21105 Saint James Dr | CONYERS |
| Carline Henry | 3852 Zoey Lee Dr | SNELLVILLE |
| Alice Larsuel | 1661 VILLAGE PLACE CIR NE | CONYERS |
| Onyea Ponder or Phillip Bethel | Pleasant Hill Rd Apts   2500 Pleasant Hill Rd A | ATLANTA |
| Veronica F or Edward D Palmer | 175 N 11TH ST | PONCHATOULA |
| Edward Robertson | 305 LINDA ANN AVE | GRAY |
| Damion C Taylor | 45287 George Dr | HAMMOND |
| Deadra Dangerfield | 303 BONITA ST | HAMMOND |
| Louis G Carraby | 5202 MAGAZINE ST | NEW ORLEANS |
| Laura A Martin | PO BOX 887 | RAYMOND |
| James or Mary Lewis | 1038 Cornell Ave | ALBANY |
| Melvin Barnes | 974 Old Highway 10 | GREENSBURG |
| Stacey M Simmons | 45287 George Dr | HAMMOND |
| Derek or Heather Newton | 2051 Wilcox Valley Dr | FREDERICK |
| Candies Robinson | 12340 Open View Ln | UPPER MARLBORO |
| Tinuade or Olusgun Adebesin | 14207 Castlemoor Ct | BURTONSVILLE |
| Jerry or Delores Chapple | 5412 ADDINGTON RD | BALTIMORE |
| Jerry or Delores Chapple | 5412 ADDINGTON RD | BALTIMORE |
| Jerry or Delores Chapple | 5412 ADDINGTON RD | BALTIMORE |
| Jerry or Delores Chapple | 5412 ADDINGTON RD | BALTIMORE |
| Jeri Buster | 3558 Carriage Hill Cir Apt 201 | RANDALLSTOWN |
| Eunice Smith | 786 NADINES CT | WESTMINSTER |
| Stephen or Lynne Kirk | 1487 STEWART LINE | CAVAN |
| Marian E Baker | 2046 COUNTY RD 44 | SPENCERVILLE |
| Brent A or Andrea M Curtis | 25 CLEARVIEW CRT | PETERBOROUGH |
| Dawn Carpenter | 5956 R505 | JARDINVILLE |
| Gabriella Micallef | 172 GLENHOLME AVE | Toronto |
| Karen M Parks | 2 MEAFORD AVE | Etobicoke |

| State | Zip | Hphone | Wphone | Mphone |
|---|---|---|---|---|
| Nevada | 89134 | 7022566728 | | |
| Hawaii | 96816 | 8089478781 | | 7022566728 |
| Hawaii | 96749 | 8089669445 | | 8089478781 |
| California | 93401 | 8055440304 | | 8089669445 |
| Ohio | 44103 | 2168812152 | | 8055440304 |
| California | 94508 | 7078156943 | 7078156943 | 2168812152 |
| Hawaii | 96720 | 8089590307 | | 7078156943 |
| California | 95827 | 9167608682 | | 8089590307 |
| California | 94083 | 9164199442 | 6502913479 | 9167608682 |
| California | 95966 | 5306048506 | | 9164199442 |
| California | 96161 | 5305596394 | | 5306048506 |
| Florida | 34736 | | | 5305596394 |
| Illinois | 60099 | 6302871788 | | |
| Washington | 98103 | 2062747967 | | 6302871788 |
| Pennsylvania | 19002 | 2158808383 | 2156434883 | 2062747967 |
| Nevada | 89431 | 7753595981 | | 2158808383 |
| Kentucky | 41094 | 8593631975 | | 7753595981 |
| Hawaii | 96797 | 8086775995 | | 8593631975 |
| Florida | 32505 | 8503081977 | | 8086775995 |
| California | 91302 | 8182221342 | 8189437763 | 8503081977 |
| California | 95831 | 9163917970 | | 8182221342 |
| California | 95922 | 5302880888 | | 9163917970 |
| California | 94519 | 9256866608 | | 5302880888 |
| California | 94702 | 5105248858 | 5102387606 | 9256866608 |
| California | 95959 | 5302650125 | | 5105248858 |
| California | 95949 | 5304772602 | | 5302650125 |
| California | 95602 | 5308780734 | 5303925540 | 5304772602 |
| California | 95815 | 9169211431 | | 5308780734 |
| California | 95828 | 9163833843 | 9168522041 | 9169211431 |
| California | 95621 | 9169683236 | | 9163833843 |
| California | 95655 | 9163697610 | | 9169683236 |
| California | 95630 | 5302107275 | | 9163697610 |
| California | 95831 | | | 5302107275 |
| California | 95670 | 9163666938 | | |
| California | 95762 | 9162034075 | | 9163666938 |
| New York | 11223 | 0 | 6462560030 | 9162034075 |
| Georgia | 30311 | 4047534395 | | 0 |
| Georgia | 30313 | 5159882600 | 4045936302 | 4047534395 |
| Georgia | 30032 | 4044417886 | | 5159882600 |
| Georgia | 30315 | 4046249687 | 4047617505 | 4044417886 |
| Florida | 32236 | 9048618222 | | 4046249687 |
| Georgia | 30088 | 7708964896 | 7708087110 | 9048618222 |
| Florida | 32218 | 9046961804 | 9043490403 | 7708964896 |
| Georgia | 30087 | 7704134551 | | 9046961804 |
| Georgia | 30058 | 4042879884 | | 7704134551 |
| | | | | 4042879884 |

| | | | | |
|---|---|---|---|---|
| Georgia | 30014 | 7707847536 | | 7707847536 |
| Georgia | 30058 | 7704826716 | | 7704826716 |
| Missouri | 64131 | 8165473663 | 8165473663 | 8165473663 |
| Georgia | 30043 | 6783492222 | | 6783492222 |
| Georgia | 30034 | 4042840848 | | 4042840848 |
| Ohio | 43110 | 6148344314 | | 6148344314 |
| Florida | 32210 | 9047664127 | | 9047664127 |
| Louisiana | 70451 | 2252477203 | | 2252477203 |
| Georgia | 30043 | 7703741538 | | 7703741538 |
| Georgia | 30058 | 6785260759 | | 6785260759 |
| Florida | 32236 | 9044057222 | | 9044057222 |
| Georgia | 30315 | 4046226558 | | 4046226558 |
| Georgia | 30296 | 6789251350 | | 6789251350 |
| Florida | 32208 | 9044831491 | | 9044831491 |
| Georgia | 30043 | 6788628184 | | 6788628184 |
| Georgia | 30215 | 6783622911 | | 6783622911 |
| Georgia | 30135 | 6784380364 | | 6784380364 |
| Florida | 32218 | 9047147029 | | 9047147029 |
| Nevada | 89121 | 7022725245 | | 7022725245 |
| Georgia | 30013 | 6786620193 | | 6786620193 |
| Louisiana | 70714 | 2252485886 | | 2252485886 |
| Louisiana | 70714 | 2257751438 | | 2257751438 |
| Georgia | 30316 | 6785961825 | | 6785961825 |
| Texas | 78702 | 5127757416 | | 5127757416 |
| Georgia | 30350 | 7704542303 | 5789138478 | 7704542303 |
| Georgia | 30316 | 4042410510 | 6783621411 | 4042410510 |
| Louisiana | 70807 | 2253419413 | | 2253419413 |
| Georgia | 30013 | 4046439624 | | 4046439624 |
| Georgia | 30318 | 4047929680 | | 4047929680 |
| Georgia | 30058 | 6786834202 | | 6786834202 |
| Georgia | 30083 | 7708790341 | | 7708790341 |
| Georgia | 30038 | 0 | 7704829492 | 0 |
| Georgia | 30038 | 7704840192 | 7704840192 | 7704840192 |
| Georgia | 31027 | 0 | 4045161184 | 0 |
| Georgia | 30214 | 6789270642 | | 6789270642 |
| Georgia | 30238 | 7702106057 | | 7702106057 |
| Georgia | 30228 | 7706292368 | | 7706292368 |
| Georgia | 30294 | 6783686400 | | 6783686400 |
| Georgia | 30281 | 4046062069 | | 4046062069 |
| Georgia | 30016 | 7708919030 | | 7708919030 |
| Georgia | 30260 | 6784224847 | | 6784224847 |
| Michigan | 48235 | 3138353367 | | 3138353367 |
| Georgia | 30316 | 4048383047 | | 4048383047 |
| Georgia | 30297 | 4043616781 | | 4043616781 |
| Georgia | 30058 | 6785088310 | | 6785088310 |
| Georgia | 30297 | 4043619215 | 4048628318 | 4043619215 |
| Georgia | 30038 | 7708823459 | | 7708823459 |

| State/Province | Code | | | |
|---|---|---|---|---|
| Georgia | 30274 | 0 | 4045393455 | 0 |
| Georgia | 30349 | 4043753587 | | 4043753587 |
| Georgia | 30058 | 6786776439 | | 6786776439 |
| Georgia | 30083 | 7704698018 | | 7704698018 |
| Georgia | 30035 | 7702569527 | | 7702569527 |
| Georgia | 30087 | 6785315104 | | 6785315104 |
| Georgia | 30058 | 6787540648 | | 6787540648 |
| Georgia | 30039 | 6784132664 | | 6784132664 |
| Georgia | 30058 | 6783572809 | | 6783572809 |
| Georgia | 30058 | 6786085825 | | 6786085825 |
| Georgia | 30281 | 6785451621 | 4044542414 | 6785451621 |
| Georgia | 30016 | 0 | 7706341382 | 0 |
| Georgia | 30078 | 6783445598 | 6784712470 | 6783445598 |
| Georgia | 30016 | 6783423292 | | 6783423292 |
| Georgia | 30349 | 4043966784 | | 4043966784 |
| Georgia | 30094 | 7709128129 | | 7709128129 |
| Georgia | 30039 | 4049921468 | | 4049921468 |
| Georgia | 30012 | 7709223378 | | 7709223378 |
| Georgia | 30349 | 4048890501 | | 4048890501 |
| Louisiana | 70454 | 9853860650 | 9856340163 | 9853860650 |
| Louisiana | 70359 | 9858767040 | | 9858767040 |
| Louisiana | 70401 | 9856323719 | | 9856323719 |
| Louisiana | 70401 | 9856623045 | | 9856623045 |
| Louisiana | 70115 | 5048950277 | | 5048950277 |
| Mississippi | 39154 | 6014211323 | | 6014211323 |
| California | 94706 | 5105267390 | 9162013780 | 5105267390 |
| Louisiana | 70441 | 2252220017 | | 2252220017 |
| Louisiana | 70401 | 9856028017 | | 9856028017 |
| Maryland | 21702 | 3016627389 | | 3016627389 |
| Maryland | 20774 | 3012183449 | 3016482091 | 3012183449 |
| Maryland | 20866 | 3018900044 | | 3018900044 |
| Maryland | 21229 | 4439804933 | | 4439804933 |
| Maryland | 21229 | 4439804933 | | 4104550191 |
| Maryland | 21229 | 4104550191 | | 4439804933 |
| Maryland | 21229 | 4104550191 | | 4104550191 |
| Maryland | 21133 | 4107017072 | | 4107017072 |
| Maryland | 21157 | | | |
| Ontario | L0A1C0 | 7057414782 | | 7057414782 |
| Ontario | K0E1X0 | 6139253502 | | 6139253502 |
| Ontario | K9K2A3 | 7057412889 | | 7057412889 |
| New Brunswick | E4W2J3 | 5065230959 | 5065239572 | 5065230959 |
| Ontario | M6E 3C4 | 4166512828 | 4167323108 | 4166512828 |
| Ontario | M8V2H5 | 4162510506 | | 4162510506 |

# EXHIBIT C

## Venti, Katherine

| | |
|---|---|
| **From:** | Brent Manning [BManning@mc2b.com] |
| **Sent:** | Monday, September 21, 2009 5:24 PM |
| **To:** | chussey@hjslaw.com; Josh Chandler; Christiansen, Erik; Jason Wood |
| **Cc:** | Venti, Katherine |
| **Subject:** | Melaleuca protective order |
| **Attachments:** | Stipulated Protective Order.pdf; Stipulated Protective Order_1.doc; Stipulated Protective Order_1.pdf; Stipulated Protective Order_2.doc |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Gentlemen,

Attached are separate protective orders we propose to be entered in the Miles and Agren cases.  These are substantively the same as the protective orders to which the parties agreed in the Foeller case.  If you are in agreement to the form please sign where indicated and return the original signature page to me for entry with the court.  If you have comments or changes please respond to all so we can get input from all concerned.

Josh, I have not included the Agrens on this email because they are not represented.  Can you forward to them as appropriate.

Thank you for your anticipated cooperation.

Brent


Brent V. Manning
Manning Curtis Bradshaw & Bednar LLC
170 South Main Street, Suite 900
Salt Lake City, Utah  84101
801-363-5678
Fax 801-364-5678
BManning@mc2b.com
--------------------------------------------------------------------
Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
====================================

**Venti, Katherine**

| | |
|---|---|
| From: | Christiansen, Erik |
| Sent: | Tuesday, September 22, 2009 2:15 PM |
| To: | Brent Manning |
| Cc: | Rick J. Armstrong; Venti, Katherine; curt hussey |
| Subject: | FW: Please see attached. |
| Attachments: | Miles Stipulated Protective Order.pdf; Agren Stipulated Protective Order.pdf |
| | |
| Follow Up Flag: | Follow up |
| Flag Status: | Flagged |

Please see the attached.

Erik A. Christiansen
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 532-1234

**Venti, Katherine**

| | |
|---|---|
| From: | Brent Manning [BManning@mc2b.com] |
| Sent: | Thursday, September 24, 2009 1:53 PM |
| To: | Venti, Katherine |
| Cc: | Josh Chandler |
| Subject: | RE: Melaleuca v. Foeller |

| | |
|---|---|
| Follow Up Flag: | Follow up |
| Flag Status: | Flagged |

I do not yet have signed P.O's from defendants or their counsel. I will let you know as soon as I do.

>>> "Venti, Katherine" <KVenti@parsonsbehle.com> 9/24/2009 12:22 PM >>>
Brent:

Please update us as to the status of the Protective Orders in Miles and Agren. We need date stamped copies regarding the filing of these (and Foeller) before we can produce the collected documents. Thanks.

Katherine Venti
Parsons Behle & Latimer
801.536.6628

From: Brent Manning [mailto:BManning@mc2b.com]
Sent: Tuesday, September 22, 2009 4:11 PM
To: Christiansen, Erik; Rick J. Armstrong
Cc: chussey@hjslaw.com; Josh Chandler; Venti, Katherine; Jason Wood
Subject: RE: Melaleuca v. Foeller

Counsel,

We provided certificates of service showing service to all parties and to the California residents. They were delivered to you yesterday. The Foeller P.O. was filed last week and copied to you when filed. I just received the signature from Rick Armstrong and from you on the two new P.O.'s I still need Mr. Hussey's signature.

Brent

>>> "Christiansen, Erik" <EChristiansen@parsonsbehle.com> 9/22/2009 2:33 PM >>>
Brent:

Katherine is coordinating document production, so I will defer to her to respond. I believe that we will have to you in the next day or so the information from the list of names you provided to indicate whether an individual is a Max distributor, the identity of their sponsor, and income information. E-mails, however, have been more slow in coming given the difficulty of tracking down individuals and obtaining access to their individual computers. I do not anticipate that we will have e-mails ready to be produced this week. I thus do not anticipate that the deposition will take place this week.

We also are still waiting for the following for document production: (i) everyone to sign the stipulated protective orders in all 3 actions; (ii) proof that the stipulated protective orders have been filed in the three Utah actions; and (iii) verification that notice has been provided to the California residents and all parties of the service of the subpoenas. Where do you stand on these tasks?

If I missed anything, or was inaccurate, I am sure Katherine Venti will correct my e-mail.

# EXHIBIT D

**Venti, Katherine**

| | |
|---|---|
| From: | Brent Manning [BManning@mc2b.com] |
| Sent: | Tuesday, September 29, 2009 5:09 PM |
| To: | Christiansen, Erik; Venti, Katherine |
| Cc: | Josh Chandler; Jason Wood; Richard Armstrong |
| Subject: | Protective order |

Erik and Ketherine,

Attached is the Stipulated Protective order as entered in the Foeller case.  The defendants in the other actions have not signed the Protective order prepared in those cases.  I understand that Agrens have defaulted and that Miles did not appear for the Preliminary injunction hearing and that the injunction was entered against them.

In all events no documents will be made available to parties in the other cases until the parties are bound by a protective order.  Please let me know when we can begin receiving documents in the Foeller case.

Brent

# EXHIBIT E



**Parsons Behle & Latimer**®

201 South Main Street
Suite 1800
Salt Lake City, UT 84111
Telephone 801.532.1234
Facsimile 801.536.6111

A PROFESSIONAL
LAW CORPORATION

Salt Lake City • Reno • Las Vegas

Katherine Venti

Direct Dial
(801) 536-6628
E-Mail
KVenti@parsonsbehle.com

September 30, 2009

VIA FIRST CLASS MAIL

Brent V. Manning
MANNING CURTIS BRADSHAW & BENDAR LC
170 South Main Street, Suite 900
Salt Lake City, Utah 84101

Richard J. Armstrong
WOOD CRAPO LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111

Re:   **MAX International Document Production**
      <u>**Melaleuca, Inc. v. Rick and Natalie Foeller**</u>
      **Seventh Judicial District of Idaho, County of Bonneville,**
      **Case No. CV-092616**
      **Produced Pursuant to Stipulated Protective Order**
      **Client Matter No. 16644.017**

Dear Gentlemen:

Enclosed please find two CD's containing documents being produced by MAX International, LLC ("MAX") pursuant to the Subpoena served upon it in the miscellaneous action *Melaleuca v. Rick and Natalie Foeller*, Third Judicial Court of Utah, Salt Lake County, Case No. 00914033 for the case of *Melaleuca, Inc. v. Rick and Natalie Foeller*, currently pending in the Seventh Judicial District of Idaho, County of Bonneville, Case No. 092616. The documents produced number MSUB00001-MSUB000072 (first CD dates 09/22/09) and MSUB000073-MSUB000110 (second CD, dated 09/29/09).

Please note that these documents have been marked CONFIDENTIAL and are produced pursuant to the Stipulated Protective Order entered into by the parties on September 22, 2009, and filed in both the Utah and Idaho cases designated above. Pursuant to the Stipulated Protective Order, these documents shall be used solely for the prosecution or defense of the *Melaleuca, Inc. v. Rick and Natalie Foeller*, cases noted above. MAX does not agree or consent to use of these documents in any other matter, case or litigation, either currently pending or filed in the future. These documents, all marked

Brent V. Manning
Richard J. Armstrong
September 30, 2009
Page Two


CONFIDENTIAL, must be used in the Rick and Natalie Foeller case in accordance with the terms and conditions of the Stipulated Protective Order.

Sincerely,

PARSONS BEHLE & LATIMER

Katherine Venti

KEV
Enclosures

Brent V. Manning
Richard J. Armstrong
September 30, 2009
Page Three


Bcc (w/out enclosures, via email):
E. Christiansen
E. Edmonds
T. Green

# EXHIBIT 3

ERIK A. CHRISTIANSEN (7372)
KATHERINE VENTI (9318)
PARSONS BEHLE & LATIMER
Attorneys for MAX International, LLC
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>RICK and NATALIE FOELLER,<br><br>    Defendants. | **AFFIDAVIT OF ERIN EDMONDS IN SUPPORT OF MAX INTERNATIONAL, LLC'S OPPOSITION TO MELALEUCA, INC.'S MOTION TO COMPEL**<br><br>Idaho Case No.: CV-09-2616<br><br>Utah Case No.: 090914033<br><br>Judge: Hon. Judge Denise Lindberg |

STATE OF UTAH          )
                       : ss.
COUNTY OF SALT LAKE    )

I, Erin Edmonds, Vice President, Legal Affairs, MAX International, LLC, hereby swear under the penalties of perjury that the following assertions are true:

    1.    I have personal knowledge of the statements of this affidavit, except for statements premised upon information and belief. As to statements premised upon information and belief, I do believe said statements to be true and will competently testify to the same if called upon to do so.

2.      To the best of my knowledge, although MAX, through its CFO, was served with the subpoena in the _Foeller_ matter on or about August 25, 2009, during that time, MAX was moving offices *and* planning for and conducting its distributor associate Annual Convention at the Salt Palace Convention Center, which occurred the week of September 9, 2009.  As such, MAX's legal affairs department did not receive the subpoena until September 8, 2009, and we were unable to get the subpoena to outside counsel for response until that date.


FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED this __6__ day of October, 2009.


_Erin Edmonds_

ERIN EDMONDS
Vice President, Legal Affairs,
MAX International, LLC


SUBSCRIBED and SWORN to before me

This __6__ day of October, 2009.


_Lori Ann Silcox_
NOTARY PUBLIC

LORI ANN SILCOX
NOTARY PUBLIC · STATE OF UTAH
COMMISSION# 577401
COMM. EXP. 02-03-2013

# EXHIBIT 4

ERIK A. CHRISTIANSEN (7372)
KATHERINE VENTI (9318)
PARSONS BEHLE & LATIMER
Attorneys for Max International, LLC
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

---

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT COURT
### SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>RICK and NATALIE FOELLER,<br><br>        Defendants. | **AFFIDAVIT OF PETER NORDBERG IN SUPPORT OF MAX INTERNATIONAL, LLC'S OPPOSITION TO MELALEUCA, INC'S MOTION TO COMPEL**<br><br>Idaho Case No.: CV-09-2616<br><br>Utah Case No.: 090914033<br><br>Judge: Hon. Judge Denise Lindberg |

---

STATE OF UTAH          )
                                     : ss.
COUNTY OF SALT LAKE  )

I, Peter Nordberg, Chief Executive Officer, MAX International, LLC, hereby swear under the

penalties of perjury that the following assertions are true:

1.        I have personal knowledge of the statements of this affidavit, except for

statements premised upon information and belief. As to statements premised upon information

and belief, I do believe said statements to be true and will competently testify to the same if

called upon to do so.

2.      Specifically, with regard to Melaleuca's request for upline and downline information related to Melaleuca's former marketing executives who are now enrolled in MAX, such information is highly confidential and proprietary material for *every* network marketing company, including MAX.

3.      Indeed, the life blood of any network marketing company is its associates in the upline and downline of genealogy compensation tree, and MLNs do not share the information with competitors. The unique methods and formulas of establishing the undisclosed uplines and downlines are protected as confidential trade secrets and such information is the result of valuable proprietary contributions attributable to the independent efforts of MAX associates. This undisclosed, sensitive information is the property of the MAX.

4.      To disclose upline or downline information to a direct competitor in a network marketing company, or even to such competitor's counsel, would be to reveal trade secrets to competitors. MAX considers the upline and downline information to be a trade secret, and protects the information as such. Indeed, in the MAX system, MAX's own associates have no access to their upline information an only limited access to their downline information.

5.      Upline and downline placement in MAX's genealogy tree is not driven by or determined by who sponsored or recruited a particular associate or whom that associate sponsors or recruits. Instead, placement in the genealogy compensation tree is complex, subject to certain negotiation, individual relationships, economic factors and other issues and is not indicative of recruiting or solicitation. In MAX's genealogy compensation tree, there is not necessarily any link to recruitment in 1 level, 5 levels, or even 7 levels, and certainly no link to recruitment as the levels increase. Therefore, providing even limited levels of upline or downline will not provide

the information Melaleuca is purportedly seeking, but only puts MAX at risk for revealing highly competitive information.

6.     Contrary to Melaleuca's assertions in its Memorandum in Support of its Motion to Compel, disclosure of the highly confidential and proprietary upline and downline information by MAX will *neither* reveal *nor* lead to the revelation that a certain former Melaleuca marketing executive solicited Melaleuca customers and marketing executives, or provided confidential information allowing others to do so and then arranged for the solicited individuals to be sponsored by someone with no connection to Melaleuca.   Indeed, the upline and downline information would show no such thing because an individual's place in an upline or downline has nothing to do with sponsorship or recruiting.

7.     Contrary to Melaleuca's assertions in its Memorandum in Support of its Motion to Compel, disclosure of the highly confidential and proprietary upline and downline information by MAX will *neither* reveal *nor* lead to the revelation whether a "former Melaleuca marketing executive was wrongly recruited and enrolled in MAX International under a dba, created an LLC or other legal entity, or enrolled under the name of a spouse or close relative."   Actually, information about dba's, LLC's, spouses or other close relatives, if indeed such a thing occurred, would be revealed in the search of addresses and email addresses that MAX has already undertaken.  Upline and downline information is irrelevant to that inquiry.

8.     Upline and downline information also will *neither* reveal *nor* lead to the revelation of individuals who may be have been recruited through the use of Melaleuca's proprietary and confidential information as no search of the upline or downline would have that information at all.

9.     Melaleuca has also demanded MAX to search its databases for "individuals who are not specifically named in the subpoena, such as members of the family or household of the named former Melaleuca marketing executive or current or former Melaleuca marketing executives in a Max International organization not named in the subpoena." First, in its database search regarding the individuals named in the original subpoena and of the additional 135 names, such searches would have revealed, if any, members of a named marketing executive's household members who are associated with MAX.  MAX does not track or designate in its system former business ties of its independent associates.  It is simply not possible, however, for MAX to conduct a database search of unnamed family members of unnamed Melaleuca marketing executives, or unnamed current or former Melaleuca marketing executives. Additionally, given that there are tens of thousands of MAX associates, it would be impossible and unduly burdensome to speak with each individual associate verbally to gather such information.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED this  6th  day of October, 2009.

PETER NORDBERG
Chief Executive Officer,
MAX International, LLC

SUBSCRIBED and SWORN to before me
This 6th day of October, 2009.

NOTARY PUBLIC

LORI ANN SILCOX
NOTARY PUBLIC • STATE OF UTAH
COMMISSION# 577401
COMM. EXP. 02-03-2013

WOOD CRAPO LLC
Richard J. Armstrong ISBN 5548
Brinton M. Wilkins, *pro hac vice*, USBN 10713
500 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061
rjarmstrong@woodcrapo.com

*Attorneys for Defendants*

## IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR BONNEVILLE COUNTY

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation, | ) |
| | ) |
| Plaintiff, | ) *AMENDED NOTICE OF DEPOSITION* |
| | ) *PURSUANT TO IDAHO R. CIV. P.* |
| | ) *30(b)(6) OF MELALEUCA, INC.* |
| vs. | ) |
| | ) |
| RICK FOELLER and NATALIE | ) Civil No. CV-09-2616 |
| FOELLER, | ) |
| | ) Judge Jon J. Shindurling |
| Defendants. | ) |
| | ) |
| | ) |

## AMENDED NOTICE OF 30(b)(6) DEPOSITION

Please take notice that pursuant to Rule 30(b)(6) of the Idaho Rules of Civil

Procedure, the deposition of Melaleuca, Inc. will be taken on October 6, 2009, beginning at

10:30 a.m. and continuing thereafter from day to day as the taking of the deposition may be

adjourned, until completed, at the Manwaring Law Office, P.A., 381 Shoup Avenue, Suite 210,

Idaho Falls, Idaho 83402, at which time and place you are notified to appear and take part in the

examination as you may be advised and as shall be fit and proper.

You are further advised that the examination will relate to the following issues:

1.    Melaleuca's alleged damages arising from Melaleuca's alleged violation of Policy 20.

2.    All evidence that Melaleuca claims supports its allegation that Defendants' alleged violation of Policy 20 is causing Melaleuca irreparable harm or injury.

3.    Any and all evidence that Melaleuca relied upon in terminating Defendants' Independent Marketing Executive Agreement ("IMEA").

4.    Any and all evidence that Melaleuca relies upon in claiming that Defendants are currently violating Policy 20.

5.    Any and all evidence that Melaleuca relies upon in claiming that Defendants have violated Policy 20.

6.    Specific provision(s) of Policy 20 which Melaleuca claims have been or are being violated currently by Defendants.

7.    Melaleuca's internal investigation into alleged violations of Policy 20 by Defendants.

8.    Melaleuca's compensation plan.

9.    Any and all changes in the compensation plain during the period of 1999 through 2009.

You are further advised that the deposition will be taken upon oral examination before a certified Court Reporter.  Such deposition will be taken for the purposes permitted by the Idaho Rules of Civil Procedure.

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of October, 2009, the foregoing

*AMENDED NOTICE OF DEPOSITION PURSUANT TO IDAHO R. CIV. P. 30 (b)(6) OF*

*MELALEUCA, INC.* was faxed to the following:

Curt R. Thomsen
T. Jason Wood
THOMSEN STEPHENS LAW OFFICES, P.L.L.C.
2635 Channing Way
Idaho Falls, Idaho 83404
Fax: (208) 522-1277

*Attorneys for Plaintiff Melaleuca, Inc.*

S:\WPDATA\PLEADING\FOELLER.MELALEUCA.NOTICE OF DEPOSITION (AMENDED).MELALEUCA-30(b)(6).wpd

4

WOOD CRAPO LLC
Richard J. Armstrong ISBN 5548
Brinton M. Wilkins, *pro hac vice*, USBN 10713
500 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061
rjarmstrong@woodcrapo.com

BONNEVILLE COUNTY
IDAHO
2009 OCT -7 AM 9: 55

*Attorneys for Defendants*

## IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR BONNEVILLE COUNTY

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation, )<br><br>    Plaintiff, )<br><br>vs. )<br><br>RICK FOELLER and NATALIE<br>FOELLER, )<br><br>    Defendants. ) | ***AMENDED NOTICE OF DEPOSITION<br>OF TRAVIS GARZA***<br><br>Civil No. CV-09-2616<br><br>Judge Jon J. Shindurling |

        PLEASE TAKE NOTICE that Defendants, through their counsel, will take the

deposition of Travis Garza on **Tuesday, October 6, 2009 at 1:00 p.m.** and continuing thereafter

from day to day as the taking of the deposition may be adjourned, until completed, at the office

of Manwaring Law Office, P.A., 381 Shoup Avenue, Suite 210, Idaho Falls, Idaho 83402, at

which time and place you are notified to appear and take such part in the examination as you may

be advised and as shall be fit and proper.

You are further advised that the depositions will be taken upon oral examination before a certified Court Reporter.  Such depositions will be taken pursuant to the purposes permitted by the Utah Rules of Civil Procedure.

DATED this 5th day of October, 2009.

WOOD CRAPO LLC

Richard J. Armstrong
*Attorneys for Defendants*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of October, 2009, the foregoing

***AMENDED NOTICE OF DEPOSITION OF TRAVIS GARZA*** was faxed to the following:

Curt R. Thomsen
T. Jason Wood
THOMSEN STEPHENS LAW OFFICES, P.L.L.C.
2635 Channing Way
Idaho Falls, Idaho 83404
Fax: (208) 522-1277

*Attorneys for Plaintiff Melaleuca, Inc.*

S:\WPDATA\PLEADING\FOELLER.MELALEUCA.NOTICE OF DEPOSITION (AMENDED).GARZA.wpd

3